621 So.2d 796 (1993)
STATE of Louisiana
v.
Mark Allen HATTAWAY.
No. 91-KA-0894.
Supreme Court of Louisiana.
July 2, 1993.
Concurring Opinion July 8, 1993.
Rehearing Denied September 2, 1993.
*798 J. Michael Small, Alexandria, Rebecca L. Hudsmith, Shreveport, Timothy A. Meche, Alexandria, for applicant.
Richard P. Ieyoub, Atty. Gen., New Orleans, Terry R. Reeves, Dist. Atty., Martin S. Sanders, III, Winnfield, for respondent.
Concurring Opinion of Justice Hall, July 8, 1993.
DENNIS, Justice.[*]
The question presented in this case is whether, after the initiation of adverse judicial criminal proceedings against a defendant and subsequent to the trial court's appointment of counsel to assist him, the state violated the defendant's state constitutional right to counsel by disregarding the appointment, obtaining a waiver, and eliciting a confession from the defendant while he was without the presence or assistance of his attorney. The defendant's confession and fruits thereof were admitted into evidence before the jury. Trial on the merits resulted in the defendant's capital murder conviction and death sentence. We reverse. Article I, § 13 of our state constitution guarantees the accused, at least after the initiation of adverse judicial criminal proceedings and the court's appointment of an attorney to assist him, the right to rely on counsel as the medium between himself and the state. Consequently, the state cannot, under such circumstances, obtain a waiver from the accused or otherwise communicate with him with respect to the offense that is the subject of the proceedings except through the medium of the defense counsel.
Additionally, we conclude that, after the initiation of adverse judicial criminal proceedings and the appointment of counsel to assist the defendant, the defendant is entitled to the help of his lawyer at any confrontation caused by the state that creates potential substantial prejudice to his right to a meaningful defense or a fair trial, if the help of a lawyer would serve to avoid or reduce that prejudice. Therefore, the state in the present case also violated the defendant's right to counsel when it unlawfully removed him from the trial venue without notice to his court-appointed counsel or to the trial court, transported him to another parish and confined him there virtually without means of communication with his attorney, family, friends, or potential defense witnesses.

I. FACTS AND PROCEDURAL HISTORY
The defendant, Mark Allen Hattaway, was convicted of the first degree murder of David Slade and sentenced to death. At the time of the killing, Slade was using a house trailer as his temporary work residence in Winn Parish. He lived in the trailer alone near his job at a concrete plant. On December 4, 1988, Slade's dead body was discovered in the woods a short distance from the trailer.
Patsy Admire, Hattaway's girlfriend, formerly had lived in the trailer with a different concrete plant worker. On December 2, 1988, she learned that Slade was using the trailer when she picked up some of her belongings there. Later that evening Admire and Hattaway borrowed her brother's truck and drove to the trailer with the intention of plying Slade with alcohol and "rolling" him; but when Slade refused to go drinking, they robbed him. During the robbery Slade was fatally shot with a pistol that Admire's brother kept in his truck.
The criminal investigation quickly focused on Admire and Hattaway. The authorities learned that the murder weapon was her brother's pistol, which her brother kept in his truck, and that he loaned the truck to Admire and Hattaway on the evening of the offense. Hattaway voluntarily submitted to a series of interviews and polygraph tests. After receiving Miranda warnings, Hattaway maintained that he *799 was innocent and not privy to any relevant information.
On January 9, 1989, Hattaway was charged with an unrelated burglary, arrested, and incarcerated in the Winn Parish jail. He was subjected to custodial interrogation about the Slade murder, during which he claimed innocence but said that Admire had told him that she had killed Slade. The officers informed Hattaway that Admire twice named him as the killer: At first she said he killed in self-defense, but later she depicted him as a deliberate killer. Based on this information, the officers rearrested Hattaway in jail, and charged and booked him with the murder of Slade. Hattaway continued to insist upon his innocence during several hours of custodial interrogation.
On February 20, 1989, Hattaway was transferred to the Winnfield City jail to prevent him from communicating with Admire, who was also confined in the Winn Parish jail.
On February 21, 1989, Hattaway was brought into court for his initial court appearance or first judicial hearing. La. C.Cr.P. art. 230.1. The district judge ascertained his identity, informed him that he had been charged with second degree murder, and explained the nature of the charge. As evidenced by the following colloquy, after ascertaining that Hattaway was financially unable to employ a lawyer the court assigned local attorney Herman Castete to represent him; and Hattaway acknowledged the appointment:
By the Court: Do you have an attorney?
By Mr. Hattaway: No, sir.
By the Court: Are you financially able to afford an attorney?
By Mr. Hattaway: No, sir.
By the Court: Mr. Hattaway, Mr. Herman Castete of the Indigent Defender Board is appointed to represent you in this case. You will be given his phone number. You will have the opportunity and the right to call him at reasonable times to discuss the case. I encourage you to do that. If you have difficulty in reaching him or talking with him or experience a problem, you are to let the Sheriff's Office know and they in turn will tell me and it will be corrected.
By Mr. Hattaway: Yes, sir.
By the Court: Do you understand?
By Mr. Hattaway: Yes, sir.
By the Court: Do you have any questions?
By Mr. Hattaway: No, sir.
The trial judge also set bail at $150,000 and remanded Hattaway to jail. The appointed attorney was not present during this initial court appearance. On the same day, before he could talk to his attorney, Hattaway was transferred from Winn Parish to the Bienville Parish jail in Arcadia.
On February 22, 1989, while incarcerated in the Bienville Parish jail, Hattaway informed the jailer that he wanted to talk to someone from Winn Parish about his case. The Bienville Parish jailer testified twice, possibly inconsistently. At the suppression hearing, he testified that Hattaway merely wanted to talk to "someone from Winn Parish;" at trial, however, the jailer testified that Hattaway had asked for "the officers down here in Winn Parish." A Bienville Parish deputy notified the Winn Parish sheriff's office of the request. Two Winn Parish deputies immediately drove to Arcadia and interrogated Hattaway in the Bienville Parish jail. Prior to the questioning, the deputies issued Hattaway oral and written warnings as follows:
Before we ask you any questions, you must understand your rights. You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions, and to have him with you during questioning. You have this right to the advice and presence of a lawyer even if you cannot afford to hire one. We have no way of giving you a lawyer, but one will be appointed for you, if you wish, if and when you go to court. If you wish to answer questions now without a lawyer present, you have the right to stop answering questions at any time.

*800 You also have the right to stop answering at any time until you talk to a lawyer. (emphasis added).
The warnings did not inform Hattaway that he had a court-appointed attorney, Herman Castete, or that he had a right to call and confer with Castete before deciding whether to talk to the officers. The officers also did not notify Hattaway's attorney of their plans to interrogate his client.
The officers obtained from Hattaway the following written waiver:
I have read the statement of my rights shown above. I understand what my rights are. I am willing to answer questions and make a statement. I do not want a lawyer. I understand and know what I am doing. No promises or threats have been made to me and no pressure of any kind has been used against me.
After signing the waiver form, Hattaway confessed to intentionally shooting Slade as part of an armed robbery. Hattaway's statement describing the killing and the role he played in the crime removed any question as to whether there was probable cause to charge him with first degree, rather than second degree, murder. Compare La.R.S. 14:30 and 30.1.
On the morning after the statement was obtained in the Bienville Parish jail, February 23, 1989, Hattaway was returned to the Winn Parish jail. Patsy Admire was still confined to that same jail at this time. Hattaway's attorney, Herman Castete, was notified of his appointment late that day.
Hattaway was indicted with first degree murder on April 12, 1989. The defense attorney moved to suppress Hattaway's confession and the evidence obtained as a consequence thereof. After a hearing, the motion to suppress was denied. Subsequently, Hattaway's confessions were introduced at his guilt and penalty trials as the centerpiece of the state's case against him. The state also introduced circumstantial evidence and an oral admission by Hattaway to a cousin that tended to inculpate Hattaway in the murder. Hattaway was convicted by the jury of first degree murder on September 13, 1990. The next day, after the penalty hearing, the jury recommended the death sentence, naming as the single aggravating circumstance the fact that the killing had been committed in the course of an armed robbery.
Hattaway moved for a new trial, but the motion was denied. At the hearing on the motion, Dr. Paul Ware, an expert in psychiatry and neurology, testified that in his opinion, Hattaway was unable to comprehend the waiver form read to him on February 22, 1989. Dr. Ware's opinion was based on his findings that Hattaway has a functional IQ of 73, reads on the 3.7 grade level, and comprehends reading on the second grade level. According to school records, Hattaway was enrolled in special education classes from the 3rd to the 10th grade, after which he dropped out of school. Dr. Ware also testified that defendant had, prior to the shooting, been enrolled in a drug abuse program and was chemically dependant. Further, Dr. Ware opined that Hattaway has an avoidant and schizoid personality, and suffers from dysthymia, a chronic depressive condition. Hattaway's mother testified at the trial that he was unusually influenced by the suggestions of others.
The trial court sentenced Hattaway to death on March 1, 1991. Hattaway appealed from his conviction and sentence to this court.

II. LEGAL PRECEPTS
The defendant's appeal raises issues pertaining to the right to the assistance of counsel under both the Louisiana and federal constitutions. The appropriate procedure for deciding a case such as this is to analyze state law, including state constitutional provisions, before reaching a federal constitutional claim. State v. Perry, 610 So.2d 746 (La.1992). The right to counsel guarantee of Article I, § 13 of the 1974 Louisiana Constitution, however, incorporates and enhances the protections that resulted from the United States Supreme Court's interpretations of the Sixth Amendment prior to the adoption of our *801 1974 state charter. See L. Hargrave, The Declaration of Rights of the Louisiana Constitution of 1974, 35 La.L.Rev. 1, 46-47 (1974). Accordingly, to aid our analysis, we consider preliminarily the Supreme Court cases establishing the Sixth Amendment right to counsel principles predating our state constitution, as well as later high court decisions explaining those principles.

A. Sixth Amendment Pre-Trial Right to Counsel
It is not difficult to state the basic Sixth Amendment right to counsel principles in general terms. A criminal defendant's pre-trial right to counsel does not fully vest until two conditions have been met. First, the right to counsel "attaches" only after the commencement of "adverse judicial criminal proceedings." Second, the right exists only during pre-trial confrontations that can be considered "critical stages" during adverse judicial criminal proceedings. If the defendant is deprived of the assistance of counsel during a "critical stage" after the commencement of adverse judicial criminal proceedings, his right to counsel is violated. Generally speaking, a defendant may validly "waive" a constitutional right if he does so voluntarily, knowingly, and intelligently in advance of its infringement. After the right to counsel has attached and counsel has been retained or appointed to represent the defendant in the adverse judicial criminal proceedings, however, the defendant has the right to rely on counsel as the medium between himself and the state. Correlatively, the state has an affirmative duty not to circumvent or dilute the protection afforded by the right to counsel.
Because the concepts of "attachment", "adverse judicial criminal proceedings", "critical stages" and "waiver of the right to counsel" are important to the interpretation of our state right to counsel provision, we will examine briefly the significant cases in which they evolved and have been explained.

1. What is a "Critical Stage" of the Proceedings?
Between 1932 and 1972, the United States Supreme Court steadily expanded the scope of the pretrial right to counsel. This expansion was based primarily on a functional analysis of whether the presence of counsel at a particular stage of the criminal process was necessary to protect the defendant's ultimate interest in a fair trial. See Comment, The Pretrial Right to Counsel, 26 Stanford L.Rev. 399-400 (1974). During this era, the Supreme Court held essentially that whenever the assistance of counsel was necessary for this purpose, the Sixth Amendment right to counsel attached and became fully activated; therefore, the state's confrontation of an uncounselled person at such a "critical stage" constituted a violation of the Sixth Amendment right to counsel.
In Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), the Court recognized the importance of the assistance of counsel during "critical stages" prior to trial by reversing the convictions of defendants who had been denied legal assistance until immediately before the commencement of a capital rape trial. The Court found that because of the lack of time for preparation and investigation, the legal assistance provided could not have been effective. Therefore, the Court held that the defendants had been denied due process by the deprivation of counsel during "perhaps the most critical period of the proceedings against [them]," the period between arraignment and trial. Id. at 57, 53 S.Ct. at 59.
Almost thirty years later, the Court used the Powell reasoning to develop a functional "critical stages" analysis. In Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961), the Court held that while arraignment would not necessarily be a "critical stage" in all jurisdictions, it was in an Alabama capital case because the defendant was required to raise a number of defenses and pleas at the arraignment or lose them permanently. The rationale of this decision was that counsel is constitutionally required at all critical stages in criminal proceedings at which rights may be preserved or lost. Using this analysis, *802 the Court extended an accused's right to counsel to certain "critical pretrial confrontations where the results might well settle the accused's fate and reduce the trial to a mere formality." United States v. Wade, 388 U.S. 218, 224, 87 S.Ct. 1926, 1931, 18 L.Ed.2d 1149 (1967). E.g., Boyd v. Dutton, 405 U.S. 1, 92 S.Ct. 759, 30 L.Ed.2d 755 (1972) (per curiam) (arraignment); Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970) (preliminary examination); Arsenault v. Massachusetts, 393 U.S. 5, 89 S.Ct. 35, 21 L.Ed.2d 5 (1968) (per curiam) (probable cause hearing at which the defendant pleaded guilty); White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963) (preliminary hearing at which a plea was made). C.f., Estelle v. Smith, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) (pretrial court-ordered psychiatric examination); Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967) (combination probation-revocation and sentencing hearing).
In United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), the Court enlarged the scope of the right to counsel and indicated that it extends to all pretrial identification confrontations. Although the line-up in that case occurred after the defendant's indictment, the Court expansively indicated that the right to counsel attaches at any "critical stage", regardless of when or where it happens or whether adverse judicial criminal proceedings have been initiated:
[T]he accused is guaranteed that he need not stand alone against the state at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial....
In sum, the principle of Powell v. Alabama and succeeding cases requires that we scrutinize any pretrial confrontation of the accused to determine whether the presence of his counsel is necessary to preserve the defendant's basic right to a fair trial....
Id. at 226-227, 87 S.Ct. at 1931-32. The Wade Court defined as a "critical stage" any pretrial procedure in which a meaningful defense or a fair trial could potentially be impaired if an uncounselled defendant were subjected to a confrontation by the state. In succeeding cases, however, the Court retrenched from the language of Wade and limited the "critical stages" analysis to the period following the commencement of adverse judicial criminal proceedings.

2. The Right to Counsel "Attaches" When "Adverse Judicial Criminal Proceedings" Begin
In 1972, a plurality of the Supreme Court concluded that the right to counsel cannot attach prior to the initiation of adverse judicial criminal proceedings. Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). The plurality reasoned that because the purpose of the right to counsel is to assure rough equality of legal representation between the defendant and the state in court proceedings, the right does not come into play until the adversarial or judicially supervised accusatory phase of the criminal process is reached. The opinion of the court elaborated:
The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that the defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. It is this point, therefore, that marks the commencement of the "criminal prosecutions" to which alone the explicit guarantees of the Sixth Amendment are applicable.
Id. at 689-690, 92 S.Ct. at 1882 (citations omitted). Subsequently, the Court adopted the Kirby plurality's rationale and held that while a person is entitled to assistance of counsel during confrontations that may be considered "critical stages" of the criminal process, the right to counsel "attaches" only after the initiation of adverse judicial *803 criminal proceedings. McNeil v. Wisconsin, ___ U.S. ___, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991); Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977).
The plurality in Kirby did not draw a single, bright fact-based line marking the earliest point at which the Sixth Amendment right to counsel attaches. But the plurality clearly indicated that the right attaches when the state's role shifts from investigation to accusation, as signalled by the initiation of adverse judicial criminal proceedings. The Court's later decisions have consistently followed this view. McNeil v. Wisconsin, ___ U.S. ___, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991); Michigan v. Jackson, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986); Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). See also Patterson v. Illinois, 487 U.S. 285, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988); Moran v. Burbine, 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986); Moore v. Illinois, 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977).
Furthermore, the Supreme Court has plainly indicated that in most jurisdictions a person's initial court appearance or first judicial hearing signals the beginning of judicial criminal proceedings and the shift of the state's role from investigation to accusation for purposes of the attachment of his right to counsel. McNeil v. Wisconsin, ___ U.S. ___, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991) (Right to counsel attached and had been invoked when defendant was brought before a county court commissioner for his "initial appearance" on an armed robbery charge.); Michigan v. Jackson, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986) (The defendant's "arraignment", actually a "first appearance" rather than a pleading-stage formal arraignment, marked the initiation of adverse judicial proceedings.); Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977) (The defendant's arraignment on the warrant caused the right to counsel to attach.). The "arraignment on the warrant" that occurred in Brewer v. Williams, supra, was substantially similar to the first step in judicial criminal proceedings in most American jurisdictions. This first step is also referred to as the "first appearance", "initial presentment", or "preliminary arraignment". 1 LaFave & Israel, Criminal Procedure, § 1.4, p. 21 (1984); Kamisar, LaFave & Israel, Modern Criminal Procedure 8-9 (4th ed. 1974); Grano, Rhode Island v. Innis: A Need to Reconsider the Constitutional Premises Underlying the Law of Confessions, 17 Amer.Crim.L.Rev. 1, 28-29 (1979).

3. Waiver of the Right to Counsel
In general, the right to counsel may be waived just as other constitutional rights. However, in the 1960's, the Supreme Court's cases established a principle that erected a virtually per se barrier to a represented defendant's waiving the right to counsel on his own with respect to incriminating statements deliberately elicited by the state after the commencement of accusatory or adverse judicial criminal proceedings. In the 1980's, the Court lowered the waiver standards, allowing a state to prove as easily as it could a Miranda waiver that an unrepresented person relinquished his Sixth Amendment right to counsel. But the Court has made clear that, once an accused has a lawyer, a separate set of constitutional protections is activated, preventing a represented defendant from waiving his right to counsel without the assistance of his lawyer during adverse judicial criminal proceedings.
The Supreme Court first characterized the question of waiver of the Sixth Amendment right to counsel in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), as "an intentional relinquishment or abandonment of a known right or privilege." Id. at 464, 58 S.Ct. at 1023. In other words, the state was required to prove that the accused knew what he was doing and that his choice was made "with eyes open." Adams v. United States ex rel. McCann, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942). Moreover, the Court made clear that the right to counsel does not depend upon a request by the defendant, Carnley v. Cochran, 369 U.S. 506, 513, 82 S.Ct. 884, 888, 8 L.Ed.2d *804 70 (1962). Cf., Miranda v. Arizona, 384 U.S. 436, 471, 86 S.Ct. 1602, 1626, 16 L.Ed.2d 694 (1966); and courts must indulge in every reasonable presumption against waiver. E.g., Brockhart v. Janis, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966); Glasser v. United States, 315 U.S. 60, 70, 62 S.Ct. 457, 464, 86 L.Ed. 680 (1942). These strict standards apply equally to an alleged waiver of the right to counsel whether at trial or at a "critical stage" of pretrial proceedings. Schneckloth v. Bustamonte, 412 U.S. 218, 238-40, 93 S.Ct. 2041, 2053, 36 L.Ed.2d 854 (1973); United States v. Wade, 388 U.S. 218, 237, 87 S.Ct. 1926, 1937, 18 L.Ed.2d 1149 (1967).
In the 1960's, the Supreme Court established a virtually absolute rule that the state cannot constitutionally obtain incriminating statements from a defendant after the initiation of adverse judicial criminal proceedings in the absence of his retained or appointed counsel. Although the principal cases dealt with post-indictment interrogations and covert elicitations, the underlying principle of each decision was that once the state's role shifts from investigation to accusation, the defendant is entitled to the assistance of counsel as the exclusive medium between himself and the state during adverse judicial criminal proceedings. By the same token, the decisions imply that during the judicially supervised accusatory process, the state cannot circumvent defense counsel to obtain a waiver of rights from the accused.
In Spano v. New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959), an indicted defendant was coercively interrogated by police until the early hours of the morning despite his repeated requests to see his lawyer. A unanimous Court reversed his conviction on the ground that the confession obtained by this interrogation was involuntary and therefore should not have been admitted into evidence at trial. Four Justices, in two concurring opinions, stated that they would also have reached this result on the ground that Spano's Sixth Amendment right to the assistance of counsel was violated. They reasoned that to permit police to "produce the vital evidence in the form of a confession which is useful or necessary to obtain a conviction" in the absence of counsel, after the right to counsel has attached, is to deny the accused "effective representation by counsel at the only stage when legal aid and advice would help him." Id. at 325-326, 79 S.Ct. at 1208-09. See also, id. at 326-327, 79 S.Ct. at 1209 (Stewart, J., concurring). As Justice Douglas succinctly put the point, "[W]hat use is a defendant's right to effective counsel at every stage of a criminal case if, while he is held awaiting trial, he can be questioned in the absence of counsel until he confesses?" Id. at 326, 79 S.Ct. at 1209.
The Court adopted the position of the concurring Spano Justices in Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). After Massiah had been indicted for conspiracy to possess and to distribute cocaine, retained a lawyer, pleaded not guilty, and had been released on bail, a government agent electronically eavesdropped on his conversation with a cooperating co-indictee. Government agents instructed the informant to engage the defendant in conversation relating to the crimes. Massiah made several incriminating statements, and these were brought before the jury through the testimony of the government agent. The Court reversed Massiah's conviction on the ground that the incriminating statements were obtained in violation of Massiah's rights under the Sixth Amendment. The Court stressed the fact that the interview took place after indictment, at a time when Massiah was clearly entitled to the assistance of counsel. Relying on Justice Douglas' Spano concurrence, the Court concluded that the need for, and consequently the right to, the assistance of counsel applied equally in this extrajudicial setting as at the trial itself. 377 U.S. at 204, 84 S.Ct. at 1201. Consequently, the Court held: "[Massiah] was denied the basic protections of [the right to the assistance of counsel] when there was used against him at trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and *805 in the absence of his counsel." Id. at 206, 84 S.Ct. at 1203.
A year later, in McLeod v. Ohio, 381 U.S. 356, 85 S.Ct. 1556, 14 L.Ed.2d 682 (1965) (per curiam), the Court summarily applied the Sixth Amendment to a situation involving explicit questioning of a suspect by law enforcement officers that occurred after adversary judicial criminal proceedings had been commenced. The Court stated that whatever the uncertainties as to what constitutes deliberate elicitation or self-incriminating admissions, any police conduct constituting "interrogation" triggers the Sixth Amendment right. See 1 McCormick on Evidence § 153, p. 604 (1992). Some courts, after McLeod, concluded that Massiah applies "to exclude post-indictment incriminating statements of an accused to government agents in the absence of counsel, even when not deliberately elicited by a government-initiated confrontation or induced by misapplication engendered by trickery or deception." LaFave and Israel, Criminal Procedure § 6.4 at 461 (1984). See Hancock v. White, 378 F.2d 479 (1st Cir.1967). See also United States v. Crisp, 435 F.2d 354, 358 (7th Cir.1970), cert. denied, 402 U.S. 947, 91 S.Ct. 1640, 29 L.Ed.2d 116 (1971); United States ex rel. O'Connor v. New Jersey, 405 F.2d 632, 636 (3d Cir.1969), cert. denied, 395 U.S. 923, 89 S.Ct. 1770, 23 L.Ed.2d 240 (1969).
Two years later, in Beatty v. United States, 389 U.S. 45, 88 S.Ct. 234, 19 L.Ed.2d 48 (1967) (per curiam), the Court held that these principles apply when the confrontation is instigated by the suspect rather than the government agent and the interrogation is overt instead of covert. In that case, where the defendant requested the meeting and initiated and led the conversation in which incriminating statements were made to an undercover agent, and which involved explicit questioning, the Solicitor General made the argument that the decisive fact in Massiah was that the police set up the confrontation between the accused and a police agent at which incriminating statements were elicited. The Court rejected this argument in an opinion that simply cited Massiah.
The Supreme Court continued to apply and explain the Massiah, McLeod and Beatty principles in the 1970's, and 80's. In Maine v. Moulton, 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985), the Court held that the state clearly violated the defendant's Sixth Amendment right when it arranged to record conversations between its informant and the defendant, who had retained counsel after being indicted on several counts of auto theft, concerning the pending charges. According to the Court, the state exploited an opportunity to confront the accused without his counsel being present because it knew or must have known that the two were meeting for the express purpose of discussing the pending charges and planning a defense for the trial. The Court concluded that the Sixth Amendment guarantees the accused, at least after the initiation of formal charges, "the right to rely on counsel as a `medium' between him and the State. [T]his guarantee includes the State's affirmative obligation not to act in a manner that circumvents the protections afforded the accused by invoking this right...." Id. at 176, 106 S.Ct. at 487. Accordingly, the underlying principle to be distilled from Massiah, McLeod, and Beatty, as Moulton explained, is that the Sixth Amendment is violated when the State obtains incriminating statements by knowingly circumventing a represented defendant's right to have counsel present in a confrontation between the accused and a state agent. Id. at 176, 106 S.Ct. at 487. See also United States v. Henry, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980).
Recently, in Patterson v. Illinois, 487 U.S. 285, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988), the Supreme Court relaxed the strict standard for a waiver of the right to counsel, except in cases in which the suspect is in fact represented by counsel and adverse judicial criminal proceedings have commenced. In Patterson, the Court refused to bar police from approaching a suspect whose Sixth Amendment right to counsel had attached but who had not retained counsel or had a lawyer appointed for him. The Court explicitly rejected arguments *806 that the Sixth Amendment right to counsel is superior to the Miranda right derived from the Fifth Amendment and that consequently waiver standards for the former should be more stringent than for the latter. Id. at 297, 108 S.Ct. at 2397. See generally, 1 McCormick on Evidence § 153, pp. 604-606 (4th ed. 1992); Comment, Patterson v. Illinois: Applying Miranda Waivers to the Sixth Amendment Right to Counsel, 74 Iowa L.Rev. 1261 (1989); 79 J.Crim.L. & Criminology 795 (1988). Ordinarily, then, the police in the situation addressed by Patterson need only give the accused the standard Miranda warnings in order to provide an adequate basis for the accused's valid waiver of the Sixth Amendment right to counsel. Patterson v. Illinois, 487 U.S. at 293, 108 S.Ct. at 2395.
On the other hand, the Supreme Court in Patterson did not diminish the virtual per se rule prohibiting the state's circumvention of defense counsel after adverse judicial criminal proceedings have been initiated and defense counsel has been retained or appointed. The Court noted, "as a matter of some significance" that the defendant had not retained or had a lawyer appointed to represent him at the time he was questioned by the authorities. Id. at 290, n. 3, 108 S.Ct. at 2393, n. 3. The Court warned that "[o]nce an accused has a lawyer, a distinct set of constitutional safeguards aimed at preserving the sanctity of the attorney-client relationship takes effect. See Maine v. Moulton.... Indeed, the analysis changes markedly once an accused even requests the assistance of counsel. See Michigan v. Jackson...." Id. at 290, n. 3, 108 S.Ct. at 2393, n. 3. In fact, the Patterson Court expressly limited its holding to unrepresented defendants when it stated:
[B]ecause the Sixth Amendment's protection of the attorney-client relationship "the right to rely on counsel as a `medium' between [the accused] and the State"extends beyond Miranda's protection of the Fifth Amendment right to counsel, see Maine v. Moulton ... there will be cases where a waiver which would be valid under Miranda will not suffice for Sixth Amendment purposes.
Id. at n. 9.
Consequently, in view of Patterson's reservation of greater rights to represented defendants and Maine v. Moulton's reaffirmation of the state's obligation not to circumvent the represented defendant's right to be dealt with only through defense counsel during adverse judicial criminal proceedings, which was recognized and approved by Patterson, we believe that the Sixth Amendment principles recognized in Massiah, McLeod and Beatty continue to bar any interrogation of the defendant after the commencement of adverse judicial criminal proceedings against a person who has retained or been appointed counsel.
Other state courts have reached the same conclusion. The Texas Court of Criminal Appeals, for example, concluded:
[I]f a suspect is in fact represented by counsel and the case progresses to the point at which the Sixth Amendment applies, the Sixth Amendment imposes requirementsincluding waiver standardsnot demanded by Miranda and the Fifth Amendment. These requirements have the purpose of "preserving" the attorney-client relationship, an objective essential to Sixth Amendment concerns and of no significance to Miranda concerns. Thus, we hold that where a relationship between the accused and his attorney is established after the Sixth Amendment has become applicable, the Sixth Amendment precludes dissolution of that relationship in the absence of counsel.
Holloway v. State, 780 S.W.2d 787, 795 (Tex.Cr.App.1989). See also, Dew v. United States, 558 A.2d 1112, 1116 (D.C.1989) ("[O]nce counsel has been `accepted by appointment' in a criminal case, the sixth amendment bars police-initiated interrogation of the accused except through arrangements with defense counsel"); People v. Kidd, 129 Ill.2d 432, 136 Ill.Dec. 18, 544 N.E.2d 704 (1989) (The state violated the defendant's Sixth Amendment right to counsel by deliberately eliciting incriminating statements by overt, direct interrogation *807 of the defendant in the absence of appointed counsel for later use at a death penalty hearing.). Cf., United States v. Thomas, 474 F.2d 110 (10th Cir.), cert. denied, 412 U.S. 932, 93 S.Ct. 2758, 37 L.Ed.2d 160 (1973) ("[O]nce a criminal defendant has either retained an attorney or had an attorney appointed for him by the court, any statement obtained by interview from such defendant may not be offered in evidence for any purpose unless the accused's attorney was notified of the interview which produced the statement and was given a reasonable opportunity to be present.").

B. Article I, § 13 Pretrial Right to Counsel
Whatever else it may mean, the right to counsel granted by Article I, § 13 of our state constitution means at least that, after adverse judicial criminal proceedings have been initiated against a person and the court has appointed a lawyer to assist him, the state cannot communicate with him about the offense related to the proceedings or obtain a valid waiver of his right to counsel for that purpose except through the medium of his attorney. We base this conclusion on the text and history of our state constitution and criminal procedural statutes, the pre-existing Sixth Amendment right to counsel jurisprudence, and principles of legal ethics.

1. Attachment of the State Constitutional Right to Counsel at the Initiation of Adverse Judicial Criminal Proceedings
Louisiana's original guarantee of the right to counsel followed the adoption of the Sixth Amendment by less than two decades. Acts of the First Legislative Council of the Territory of Orleans, 1804, 1st Sess. c. L, § 35, p. 442. See also State v. Cummings, 5 La.Ann. 330 (1850). The Louisiana Constitution of 1921, Article I, § 9, in pertinent part, provided that "[t]he accused in every instance shall have the right ... to defend himself, to have the assistance of counsel...." Article 142 of the 1928 Louisiana Code of Criminal Procedure mirrored the general constitutional directive for the assistance of counsel "in every instance", and Article 143 directed the court to "immediately" appoint counsel for an accused felony offender if the defendant requested an attorney and proved his inability to employ counsel. Although Louisiana courts judicially recognized an indigent's right to court-appointed counsel as early as 1862, see State v. Ferris, 16 La. Ann. 424 (1862); Comment, Some Aspects of the Right to Counsel, 36 La.L.Rev. 666, 667 (1966) (L. Hargrave) (hereafter "Comment"), the general practice was to appoint counsel after a defendant pleaded at arraignment, with earlier appointment being deemed advisable, especially in capital cases. See State v. Brodes, 156 La. 428, 100 So. 610 (1924); Bennett, Right to CounselA Due Process Argument, 23 La. L.Rev. 662 (1963); Comments to Title XIV, Expose des Motifs, La.Law Inst.Code of Cr.Procedure Revision (1962); Comment at 669.
In 1963, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), elevated the right of an indigent defendant to court-appointed counsel in state felony trials to the federal constitutional level. Gideon, in combination with the "critical stages" expansion of the 1960's and early 70's, discussed in detail in preceding sections of this opinion, outmoded many of Louisiana's constitutional and statutory provisions. After these developments, it was clear that the federal right to counsel attached at least as early as the initiation of adverse judicial criminal proceedings; thus, the need for the assistance of counsel could arise at critical stages of the proceedings well before the arraignment. Consequently, Louisiana's response in 1966 by adding Articles 512 and 513 of the Louisiana Code of Criminal Procedure to provide that the court shall appoint counsel to assist an indigent "before he pleads to the indictment" did not assure that indigents would be afforded the assistance of counsel at each critical stage of the adverse judicial criminal proceedings. See La.C.Cr.P. arts. 512, 513.
A 1971-72 study of the Louisiana court system called attention to the need for *808 explicit statutory and/or constitutional provisions setting a more appropriate time for the appointment of counsel for indigents, definitely marking the limits of the investigatory and accusatory stages of the criminal process and designating the commencement of judicial responsibility. See "A Study of the Louisiana Court System", The Institute of Judicial Administration, 92-109 (March 1972). Acting on the findings and recommendations of the Study, the legislature in its 1972 regular session added Article 230.1 to the Louisiana Code of Criminal Procedure to establish an initial court appearance or first judicial hearing procedure in criminal cases. See Senate Bill No. 342, Regular Session of 1972, and comments; State v. Chaney, 384 So.2d 442, 443-444 (La.1980). The article provided that at the first judicial hearing the sheriff or other law enforcement officer must bring an arrested person in his custody before a judge within a stipulated number of hours of arrest for appointment of counsel, if the accused is indigent, and for determination or review of bail. La.C.Cr.P. art. 230.1(A) & (B). If the person is not brought before a judge as required, he must be released. Id. at (C). This mandatory first appearance before a judge serves a highly significant functionit forms the dividing line between the initial period during which an accused is detained by, and under control of, the law enforcement branch of the criminal justice system, and the time when responsibility for his custody is assumed by the judicial branch. State v. Chaney, 384 So.2d at 444.
Hence, by the time of the drafting and ratification of the 1974 Louisiana Constitution in 1973-74, Gideon v. Wainwright had constitutionalized an indigent's right to court-appointed counsel in state trials, Kirby v. Illinois had fixed the attachment of the Sixth Amendment right to counsel at the initiation of accusatory or adverse judicial criminal proceedings, and the Louisiana legislature, by enacting La.C.Cr.P. art. 230.1, had established the initial court appearance or first judicial hearing to demarcate investigation and accusation, provide for the initiation of adverse judicial criminal proceedings, and fix the time for the appointment of counsel to assist indigents. Working within the context of these antecedent events, the drafters and ratifiers in Article I, § 13 guaranteed that "[a]t each stage of the proceedings, every person is entitled to assistance of counsel of his choice, or appointed by the court if he is indigent and charged with an offense punishable by imprisonment."
Considering the purposes and function of the first judicial hearing established by La.C.Cr.P. art. 230.1, and the background of the Sixth Amendment jurisprudence, we conclude that a person's right to the assistance of counsel guaranteed by Article I, § 13 attaches no later than the defendant's initial court appearance or first judicial hearing. The plain words of Article I, § 13 do not restrict a person's right to assistance of counsel to the trial, the formal prosecution, or to any intermediate stage of the proceedings. Thus, it is clear that the right attaches at the earliest point of the judicial criminal proceedings. See L. Hargrave, The Declaration of Rights of the Louisiana Constitution of 1974, 35 La. L.Rev. 1, 46-47 (1974). On the other hand, the drafters' and ratifiers' refusal to use the term "critical stages" indicates that they did not intend for attachment of the right to counsel to occur at crucial confrontations prior to the initiation of adverse judicial criminal proceedings, as was suggested by United States v. Wade, supra. The convention delegates and the voters evidently concluded that the right to counsel should attach no later than a person's initial court appearance or first judicial hearing because this proceeding, under both federal and state law, marks the division between investigation and accusation and signals the initiation of adverse judicial criminal proceedings. Kirby v. Illinois, supra; La.C.Cr.P. Art. 230.1 (Added by Act 700 of 1972). See also State v. Chaney, supra; Sen. Bill No. 342, Regular Session of 1972 and comments; "A Study of the Louisiana Court System," The Institute of Judicial Administration, pp. 93-109 (March 1972).

*809 2. What is a "Stage of the Proceedings"?

At the time of the adoption of Article I, § 13's right to counsel provision, the basic test was well-settled for determining whether a confrontation was a "stage" of the adverse judicial criminal proceedings requiring the assistance of counsel. The United States Supreme Court never completely rejected the functional "critical stages" analysis articulated in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Instead, the Court merely limited the temporal application of that test to the period of time following the initiation of adverse judicial criminal proceedings. Under the two part test that began to evolve in Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) (plurality opinion) a violation of the Sixth Amendment right to counsel turns not only on the initiation of adverse judicial criminal proceedings but also on whether the uncounselled confrontation to which the defendant was subjected was of a "critical" nature. See Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); United States v. Ash, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973); Coleman v. Alabama, 399 U.S. 1, 9, 90 S.Ct. 1999, 2003, 26 L.Ed.2d 387 (1970).
Therefore, even after the attachment of the right to counsel, not all activity involving the defendant constitutes a "critical stage." For instance, the Court made clear in Wade itself that various preparatory steps, such as systematized or scientific analyzing of the accused's fingerprints, blood sample, clothing, hair, and the like are not critical stages because there is minimal risk that the absence of defense counsel at such stages might derogate from the defendant's right to a fair trial. United States v. Wade, 388 U.S. at 227-228, 87 S.Ct. at 1932. Accordingly, while limiting its temporal scope, the Court adhered to the same functional "critical stages" test that required it "to analyze whether potential substantial prejudice to defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice." Id. at 227, 87 S.Ct. at 1932.
Because there is no evidence in the text or drafting history of Article I, § 13 to indicate that the drafters and ratifiers intended to deviate from the established test for when the assistance of counsel is necessary during adverse judicial criminal proceedings, we conclude that a functional approach similar to that set forth in Wade should be used to decide whether a confrontation is a "stage of the proceedings" at which a person is entitled to assistance of counsel under our state constitution. There is no indication that the drafters and ratifiers intended to disrupt the balance that the functional analysis test had struck between the two basic societal objectives of protecting the individual's rights and providing an effective system of law enforcement.

3. Waiver of the State Constitutional Right to Counsel
By January of 1973, when the Louisiana Constitutional Convention was meeting in its first sessions, the United States Supreme Court had established strong precedents under the Sixth and Fourteenth Amendments barring deliberate police efforts to elicit incriminating statements from an accused in the absence of defense counsel after the commencement of adverse judicial criminal proceedings. See Massiah, supra; McLeod, supra; Beatty, supra. The Court's cases reflect an underlying principle that, under these circumstances, the state is prohibited from communicating with the defendant about the subject of the proceedings except through his legal representative, regardless of who initiated the confrontation or whether the elicitation was overt or covert. This principle clearly indicates that a defendant in this situation has a right to rely on his attorney as the medium between himself and the state; and, correlatively, that the state owes him an affirmative obligation not to circumvent or dilute the protection afforded by the right to counsel. That the Court has elaborated upon this in later cases confirms and does not take away from the fact *810 that the principle was established prior to the adoption of our state constitution. See Maine v. Moulton, 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985), citing and discussing Massiah, supra; Beatty, supra; and Spano, supra.
The text and history of Article I, § 13 exhibit no intent to dilute the strictness of the standards previously established by the Supreme Court's Sixth Amendment jurisprudence governing the waiver of the right to assistance of counsel. On the contrary, as this court's decisions have recognized, Article I, § 13 incorporates the pre-existing general federal principles concerning whether an accused has validly waived his right to counsel or elected to represent himself. State v. Strain, 585 So.2d 540 (La.1991); City of Monroe v. Wyrick, 393 So.2d 1273 (La.1981); State v. White, 325 So.2d 584 (La.1976). See also State v. Green, 443 So.2d 531 (La.1983); State v. Trevathan, 414 So.2d 316 (La. 1982); State v. Bell, 381 So.2d 393 (La. 1980). Accordingly, we believe that it was also the constitutional intent to adopt the principle, established in the Massiah line of cases, that once the right to counsel attaches and an attorney has been appointed or retained to assist the defendant, the state must respect the defendant's right to rely on his counsel as a medium between him and the state. See State v. McGhee, 350 So.2d 370 (La.1977); Beatty v. United States, 389 U.S. 45, 88 S.Ct. 234, 19 L.Ed.2d 48 (1967) (per curiam); McLeod v. Ohio, 381 U.S. 356, 85 S.Ct. 1556, 14 L.Ed.2d 682 (1965) (per curiam); Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).
The fundamental concept of defense counsel as the exclusive medium between the accused and the state is also inherent in other constitutional and ethical precepts designed to safeguard the rights of individuals in our system of adversary criminal justice. First, Article I, § 13 itself clearly guarantees to every person the right to have the assistance of his chosen or appointed counsel once adverse judicial criminal proceedings have commenced. This would be a hollow right and counsel of no assistance if the state were free to disregard the retention or appointment and circumvent the right to counsel to the person's prejudice. The denial of the opportunity for counsel to confer or consult with the accused "could convert the appointment of counsel into a sham and nothing more than a formal compliance with the Constitution." Avery v. Alabama, 308 U.S. 444, 446, 60 S.Ct. 321, 322, 84 L.Ed. 377 (1939) (Black, J.). Moreover, Article I, § 13, in its final sentence, plainly indicates that the Constitution's guarantee of the assistance of counsel for indigents cannot be satisfied by a mere formal appointment; that provision mandates that "[t]he legislature shall provide for a uniform system for securing and compensating qualified counsel for indigents." 1974 La. Const. Art. I, § 13.
Second, district attorneys, as constitutional officers and as officers of the court, owe a duty under their oaths and ethical precepts to carry out the state's affirmative duty not to act in a manner that circumvents or dilutes the protection afforded by the right to counsel during the accusatory stage of the criminal process. A district attorney has charge of every criminal prosecution by the state in his district, La. Const.1974, Art. V, § 26(B), and has a duty to support the constitution and laws of this state. Id. Art. X, § 30. The Rules of Professional Conduct of the Louisiana State Bar Association prohibit a prosecutor from seeking "to obtain from an unrepresented accused a waiver of important pretrial rights...." Rule 3.8(c). They also prevent a lawyer from communicating about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, or effecting the prohibited communication through a third person, including the lawyer's client. Rule 4.2. The implication of the constitution and these rules is that once the state has invoked the system of adversary criminal justice against a person by means of the first appearance or first judicial hearing, La.C.Cr.P. art. 230.1, and the court has appointed or enrolled counsel to assist him, the district attorney has the constitutional authority and the duty to demand that all other state agents respect *811 the constitutional right to counsel of the person subject to the judicial criminal proceedings. See also Rule 8.4(e) (It is professional misconduct for a lawyer to knowingly assist or induce another, or act through another, to engage in conduct that would for the lawyer be a violation of the Rules of Professional Conduct.). In fact, these ethical obligations imply a prosecutorial duty to take affirmative steps to assure that the police do not, after the initiation of adverse judicial criminal proceedings, deliberately elicit from a represented defendant incriminating statements or a waiver of important rights. See State v. Sanchez, 129 N.J. 261, 609 A.2d 400 (1992) (Discussing ethical precepts implicated in the case where a defendant was convicted of non-capital murder, in large part, on the basis of the admission into evidence of his uncounselled, post-indictment statement taken in violation of his constitutional right to counsel.).
Third, this court has recognized that, in some instances, even before the initiation of adverse judicial criminal proceedings, the concept of our accusatory system of justice may require the state to honor the accused's right to rely on his attorney as the medium between himself and the state. Along with the prevailing body of other state courts, we have expressed the view that statements obtained as the result of police interference with communications between an attorney and a suspect must be suppressed. State v. Matthews, 408 So.2d 1274 (La.1982) (Attorney's request to speak with defendant refused and instruction to cease interrogation ignored); State v. Jackson, 303 So.2d 734 (La.1974) (Lawyer retained by defendant's family denied permission to communicate with defendant who was not told of lawyer's attempt). See Moran v. Burbine, 475 U.S. 412, 439 n. 10, 106 S.Ct. 1135, 1150-51 n. 10, 89 L.Ed.2d 410 (1985) (Stevens, J. dissenting, quoting Brief for American Bar Association as Amicus Curiae 4 n. 2). State v. Thomas, 406 So.2d 1325 (La.1981) (Defendant's statutory right to procure and confer with counsel attaches at post-arrest, pre-accusatory line-up); State v. Weedon, 342 So.2d 642 (La. 1977) (State's elicitation of incriminating statement from suspect during booking procedure in breach of agreement with defense counsel violated the state constitutional right to counsel). Cf., State v. McGhee, supra (Article I, § 13 of state constitution prohibits uncounselled line-up of accused during adverse judicial criminal proceedings).
The previous decisions of this court dealing with the right to the assistance of counsel have not focused on the analysis, interpretation, and application of the Article I, § 13 right to counsel guarantee. Consequently, our prior decisions are not controlling in the present case for one or more reasons: (1) Most of the cases arose under the 1921 Louisiana constitution and, therefore, were not governed by our current state constitution. See, e.g., State v. Cotton, 341 So.2d 355 (La.1977); State v. Lawrence, 294 So.2d 476 (La.1974); State v. Taylor, 347 So.2d 172 (La.1977); State v. Johnson, 327 So.2d 388 (La.1976); State v. Rudolph, 332 So.2d 806 (La.1976); State v. Stewart, 325 So.2d 819 (La.1976); State v. Johnson, 306 So.2d 724 (La.1975); State v. Jefferson, 284 So.2d 577 (La.1973); State v. Edgecombe, 275 So.2d 740 (La.1973); (2) A number of cases are factually distinguishable because the alleged violation occurred prior to either the initiation of adverse judicial criminal proceedings or the appointment or retention of defense counsel, or both. See, e.g., State v. Huntley, 418 So.2d 538 (La.1982); State v. Thomas, supra; State v. Vaughn, 378 So.2d 905 (La. 1979); State v. Cotton, supra; State v. Hargrove, 330 So.2d 895 (La.1976); State v. Lawrence, supra; and (3) Many cases were based upon interpretations and applications of the Sixth Amendment right to counsel guarantee. See, e.g., State v. Harper, 430 So.2d 627 (La.1983); State v. Huntley, supra; State v. Thomas, 406 So.2d 1325 (La.1981); State v. Siegel, 366 So.2d 1358 (La.1978); State v. Spears, 350 So.2d 603 (La.1977); State v. Lawrence, supra; State v. Nero, 319 So.2d 303 (La. 1975).
Moreover, at times we may have partially misperceived the Supreme Court's interpretations of the Sixth Amendment right to *812 counsel. For example, in State v. Harper, 430 So.2d 627, 634 (La.1983), this court correctly indicated that the federal right to counsel attaches upon the "commencement of adversarial proceedings" but mistakenly concluded that an accused may waive his Sixth Amendment right to counsel without the knowledge or assistance of the lawyer that the court had appointed to assist him in the adversarial judicial criminal proceedings. Evidently, this court was misled by the Supreme Court's opinion in Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). The Court held that the deliberate elicitation of incriminating statements from a represented defendant after the initiation of adverse judicial criminal proceedings was a right to counsel violation. But the Court short-circuited its analysis by saying that Brewer had not validly waived his right to counsel because, under the facts, he displayed no intention to relinquish that right. However, in subsequent opinions, the Court has reaffirmed the true basis for that result, viz., that under the principles established in the Massiah line of cases, the defendant cannot waive his Sixth Amendment right to counsel on his own once it attaches and he has retained or accepted appointment of counsel by the court. Patterson v. Illinois, supra; Maine v. Moulton, supra. Cf., Holloway v. State, 780 S.W.2d 787 (Tex.Cr. App.1989); Dew v. United States, 558 A.2d 1112 (D.C.1989); People v. Kidd, 129 Ill.2d 432, 136 Ill.Dec. 18, 544 N.E.2d 704 (1989). See also United States v. Thomas, 474 F.2d 110 (10th Cir.), cert. denied, 412 U.S. 932, 93 S.Ct. 2758, 37 L.Ed.2d 160 (1973).
Furthermore, State v. Harper, supra, is also distinguishable from the present case on its facts. In Harper, the state did not commit a second, separate violation of the defendant's right to counsel by arranging to have him confined virtually incommunicado in another parish for investigatory purposes without the knowledge or assistance of his court-appointed counsel. On the other hand, in Harper, the police officers reminded Harper that he had court-appointed counsel with whom he was free to consult prior to talking with them about a waiver or submitting to interrogation. The officers in the present case did not remind Hattaway of the court-appointed attorney or specifically offer to let Hattaway confer with him. Instead, they gave Hattaway a warning that reasonably could have led him to believe that he did not have a court-appointed lawyer from whom he could receive assistance prior to deciding whether to waive his rights or talk to the officers. Therefore, even under the partially anomalous federal right to counsel principles applied in Harper, the conduct of the deputies in Bienville Parish toward Hattaway fell below that standard and amounted to a violation of his constitutional rights.

III. APPLICATION OF THE PRINCIPLES OF ARTICLE I, § 13
Applying the principles of Article I, § 13 to the case at hand, it is clear that Hattaway's right to counsel guaranteed by this provision was twice violated by the state: First, when the state, after initiating adverse judicial criminal proceedings against him and causing counsel to be appointed to assist him by the court, removed Hattaway from Winn Parish without notice to his counsel or the trial court, transported him to Bienville Parish, and confined him there virtually without means of communication with his attorney, family, friends, or potential defense witnesses; Second, when the state obtained a purported waiver of Hattaway's right to counsel and interrogated him in Bienville Parish in the absence of and without notice to his attorney.
Hattaway's right to the assistance of counsel at each stage of these proceedings attached when the state brought him to court on February 21, 1989 for the initial court appearance or first judicial hearing, after he had been arrested and charged with second degree murder, and the judge explained the charge to him, appointed counsel to assist him, set his bail and recommitted him to jail pending preliminary examination. At this point, adverse judicial criminal proceedings had been initiated against him. Hattaway was no longer subject *813 merely to the investigatory function of the criminal process; he had become involved with the accusatory stage of that process and had been immersed in the intricacies of substantive and procedural criminal law. Therefore, after the initiation of adverse judicial criminal proceedings and the appointment of counsel to assist him, Hattaway had, under Article I, § 13 of our state constitution, a right to the assistance of counsel at any point at which his substantial rights might be affected, where assistance of counsel would be necessary to assure his ultimate right to a meaningful defense or a fair trial.
The state first violated Hattaway's right to counsel by transporting him from Winn Parish to Bienville Parish without notice to his court-appointed counsel or to the trial court. The state's removal of Hattaway from Winn Parish was itself a stage of the proceedings at which he was entitled to the assistance of counsel. This confrontation between the state and Hattaway involved grave and unlawful potential for prejudice to his right to a fair trial. The removal was not authorized by law. The judiciary had assumed responsibility for his custody, and La.R.S. 15:706 allows a sheriff to transfer an unconvicted prisoner to another parish only for security or health reasons after notifying the court at least seventy-two hours in advance. The state's officers did not notify the court. Nor was Hattaway moved for health or security reasons. Rather, he was removed to isolate him from Patsy Admire and thereby make further interrogation of him more productive. The unlawful transfer placed Hattaway virtually incommunicado in a strange prison outside his home parish and the trial venue. Consequently, it prevented his communication not only with Patsy Admire but also with his attorney, family, friends and potential defense witnesses. It therefore placed him in a coercive situation resembling solitary confinement and brought pressure to bear upon him to talk to the authorities about the offense with which he was charged. The presence and assistance of counsel at this stage of the proceedings could have averted prejudice by preventing the unlawful transfer and by providing Hattaway with consultation and advice as to his legal and constitutional rights during the crucial confrontations and his remote confinement. Therefore, both the trial court and Hattaway's counsel should have been notified prior to the impending transfer, and counsel's presence should have been a requisite to the harmful step in the proceedings taken for strategic investigatory purposes.
The state cannot and does not argue that Hattaway waived his right to the assistance of counsel during the confrontations involved in his unlawful removal from Winn Parish and virtually incommunicado confinement in Bienville Parish. It is clear that Hattaway had no opportunity to waive his right to counsel during that stage of the proceedings.
The state violated Hattaway's Article I, § 13 right to counsel at a second stage of the proceedings in Bienville Parish when its officers failed to respect his right to rely on his court-appointed counsel as a medium between himself and the state's agents. By communicating with Hattaway about the offense with which he was charged, obtaining a purported waiver of counsel, and interrogating him with respect to that subject, in the absence of his lawyer, the state violated its affirmative duty to avoid conduct that in any manner circumvents or tends to dilute the protection afforded by the right to counsel.
The state's argument that Hattaway validly waived his Sixth Amendment right to counsel prior to the Bienville Parish interrogation is without merit. First, the argument is flawed intrinsically because it is based on a misunderstanding of the federal right to counsel principles. Second, and more important, the argument is incongruous because it fails to consider and address the state constitutional right to counsel principles upon which our decision in the present case is based.
The state concedes that under Beatty v. United States, supra, the fact that Hattaway may have initiated the confrontation with the police did not justify their communication with him about the case while he *814 was unassisted by his lawyer. The state contends, however, that the Miranda warning given Hattaway cured the constitutional violation and provided an adequate basis for a valid waiver of his Sixth Amendment right to counsel. We disagree. Beginning with Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), the Supreme Court's decisions have indicated the underlying principle that law enforcement personnel may not bypass counsel in favor of direct communications with the defendant once adversary proceedings have begun. After Patterson v. Illinois, supra, and Maine v. Moulton, supra, it is abundantly clear, if it was ever in doubt, that after the initiation of adverse judicial criminal proceedings, direct communications between the prosecutor, the police, or their agents, and a represented defendantregardless of whether the accused has received Miranda warningscan only be viewed as an attempt to "circumvent" and "dilut[e] the protection afforded by the right to counsel." Maine v. Moulton, 474 U.S. at 171, 106 S.Ct. at 484. See Holloway v. State, 780 S.W.2d 787 (Tex.Cr.App. 1989); Dew v. United States, 558 A.2d 1112 (D.C.1989); People v. Kidd, 129 Ill.2d 432, 136 Ill.Dec. 18, 544 N.E.2d 704 (1989). Cf., United States v. Thomas, 474 F.2d 110 (10th Cir.), cert. denied, 412 U.S. 932, 93 S.Ct. 2758, 37 L.Ed.2d 160 (1973).
The state's argument is even more inappropriate when considered within the context of our state constitutional right to counsel principles. The assistance of counsel guarantee of Article I, § 13 of the 1974 Louisiana Constitution is more than an incorporation of the protections that resulted from the pre-existing United States Supreme Court's interpretations of the Sixth Amendment, such as Massiah, McLeod, Beatty, Kirby and Wade. In order to comprehend the meaning of the Article I, § 13 safeguard, we cannot confine ourselves to the pre-1975 federal cases. As we have indicated earlier in this opinion, we have taken into consideration not only the prior federal jurisprudence, but also the wording of the provision, its drafting history, pre-existing state statutes, legal ethics precepts, and other state constitutional principles.
Accordingly, with all of the foregoing precepts in mind, we have concluded that the Article I, § 13 right to counsel attaches when the state's role shifts from investigation to accusation with the initiation of adverse judicial criminal proceedings. This occurs no later than the initial court appearance or first judicial hearing. La. C.Cr.P. art. 230.1. Once the right to counsel attaches and has been asserted by the enrollment or appointment of counsel, the state may not act as the adviser to an accused when it is, in reality, his adversary. Therefore, from this point in the adversary process, it is impermissible for the prosecutor or other state agents to communicate directly with the accused, without the knowledge and consent of his counsel, regarding the offense which is the subject of the adverse judicial criminal proceedings.
Hattaway advances other arguments in support of his contention that his conviction and sentence should be overturned, including the following: (i) that he was denied his constitutional right to the effective assistance of counsel at the penalty phase of the criminal proceedings and in his efforts to suppress his incriminating statements; (ii) that the exclusion for cause of an eligible prospective juror who expressed reservations against the death penalty violated his constitutional rights to a fair trial and an impartial jury; (iii) that his constitutional rights were violated by the introduction of evidence and argument irrelevant to his moral culpability; and (iv) that his sentencing jury was precluded from considering evidence in mitigation of death, thereby creating an unconstitutionally unacceptable risk that death was imposed in disregard of facts calling for a lesser sentence. Given our decision on the primary issue addressed in this review, we find it unnecessary to consider and resolve these remaining arguments raised by defense counsel.

IV. HARMFUL ERROR
The state does not contend that the introduction at the guilt and penalty phases *815 of Hattaway's incriminating statements of February 22, March 17, and March 31, 1989, and the fruits thereof, was harmless error. However, in the interest of conducting a thorough, efficient judicial review, we have examined the record to determine "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction" and whether the error was "harmless beyond a reasonable doubt * * *." Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); see State v. Lee, 524 So.2d 1176 (La.1988); State v. Landry, 414 So.2d 674 (La.1982); State v. Taplette, 545 So.2d 985 (La.1989); State v. Gibson, 391 So.2d 421 (La.1980). We conclude that the admission of this evidence was not harmless error.
Hattaway's confession and the fruits thereof formed the core of the state's case. In addition to the tape recording of the defendant's confession, which was played for the jury, the state introduced a corrected transcribed version of the confession which the defendant had reviewed and initialed. The state also introduced the testimony of a Winn Parish Sheriff's Office investigator concerning information given to him by the defendant, as a consequence of his confession, regarding the location of the ammunition clip from the murder weapon. Without the confession and its fruits, the prosecution's evidence consisted only of Hattaway's cryptic oral admission of guilt to his cousin and the circumstantial evidence implicating him in the crime. This evidence did not necessarily paint Hattaway as the "trigger person" or the main mover in the criminal scheme. There was neither eyewitness testimony nor direct physical evidence placing Hattaway at the scene of the killing. The evidence, however, indicated that the criminal plan that resulted in Slade's murder could not have been conceived or executed without Patsy Admire, her brother's truck and gun, and her encounter with David Slade at the house trailer prior to the murder. In the absence of the tainted evidence, the state's case did not convincingly rule out the possibility of provocation by the victim or other extenuating and mitigating circumstances. Consequently, we conclude that there was a reasonable possibility that the introduction of the incriminating statements and their evidentiary products could have contributed to the capital murder conviction and death sentence. Therefore, under the circumstances of this case, we cannot say that the error was harmless beyond a reasonable doubt.

CONCLUSION
For the reasons assigned, the defendant's conviction and sentence are reversed and the case is remanded to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
COLE, J., concurs believing federal jurisprudence requires this result.
HALL, J., concurs with reasons.
MARCUS, J., dissents and assigns reasons.
LEMMON, J., dissents and will assign reasons.
HALL, Justice, concurring.

[Filed July 8, 1993]
I agree that the defendant's Sixth Amendment right to counsel attached when the state commenced adversary formal judicial proceedings through the 72-hour hearing mandated by LSA-C.Cr.P. art. 230.1. This hearing was the functional equivalent of the Michigan "arraignments" described in Michigan v. Jackson, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), where the U.S. Supreme Court confirmed earlier decisions that "[A] person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" Thereafter, government efforts to elicit information from the accused represent "critical stages" at which the Sixth Amendment applies. Michigan v. Jackson, supra; Maine v. Moulton, 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985).
*816 At the Article 230.1 hearing, counsel was appointed for the defendant. "Once an accused has a lawyer, a distinct set of constitutional safeguards aimed at preserving the sanctity of the attorney-client relationship takes effect." Patterson v. Illinois, 487 U.S. 285, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988); Maine v. Moulton, supra.
Once the right of counsel has attached and has been asserted, the state must honor it. The Sixth Amendment guarantees the accused, after the initiation of formal charges and especially after the appointment of counsel, the right to rely on counsel as a "medium" between him and the state. This guarantee includes the state's affirmative obligation not to act in a manner that circumvents the protection accorded to the accused by the right to counsel. Maine v. Moulton, supra.
It matters not that the officers interrogating the accused may not have been aware that counsel had been appointed for him. Sixth Amendment principles require that the state's knowledge be imputed from one state actor to another. One set of state actors (the police) may not claim ignorance of the appointment of counsel by another state actor (the court). Michigan v. Jackson, supra.
Applying these precepts of federal constitutional law to the present case, after commencement of adversarial judicial proceedings and the appointment of counsel for the defendant, further interrogation of the defendant by the police was precluded, regardless of by whom initiated, without the presence of counsel or the opportunity for the defendant to confer with counsel. Initiation of further contact with the police by the defendant did not and could not constitute a waiver of his right to counsel under these circumstances. It follows, of course, that the statements made by the defendant during the course of the uncounseled interrogation must be excluded from evidence.
Since federal constitutional law compels this conclusion, it is not necessary to rest the decision on the provisions of Article 1, Section 13 of the Louisiana Constitution, although the Louisiana constitutional provision certainly requires the same result. It is also unnecessary to rest the decision on a finding that moving the defendant to another jail out of the parish was designed to circumvent the defendant's right to counsel, a finding that I consider unsupported by the evidence.
MARCUS, Justice (dissenting).

[Filed July 2, 1993]
I dissent from the majority's conclusion that the state did not obtain a valid waiver from defendant of his Sixth Amendment right to counsel.
Under Michigan v. Jackson, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), it is clear that if police initiate interrogation after a defendant has asserted his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid. Under Maine v. Moulton, 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985), police may not knowingly circumvent the accused's right to have counsel present in a confrontation between the accused and a state agent. I believe neither situation is present in this case.
The record indicates that defendant requested a meeting with Winn Parish deputies. No evidence was produced showing the deputies were aware defendant was represented by counsel, or that they made any knowing effort to circumvent his right to have counsel present. I find no indication from the record that the intent of the police in moving defendant from Winn Parish to Bienville Parish was to deprive him of contact with his attorney. Rather, the police had a legitimate interest in preventing defendant from communicating with Patsy Admire, a witness to the shooting who was also confined in the Winn Parish jail.
I believe a fair reading of the U.S. Supreme Court decisions in this area, together with our decision in State v. Harper, 430 *817 So.2d 627 (La.1983), compels the conclusion that a defendant who has invoked the right to counsel or been appointed counsel may validly waive his right to have counsel present if he initiates contact with police and there is no evidence that police have knowingly circumvented his right to counsel.
NOTES
[*] Cole, J. assigned to participate in this decision argued prior to his retirement.