645 So.2d 1215 (1994)
STATE of Louisiana
v.
Alton P. CUREAUX.
No. 93-KA-0838.
Court of Appeal of Louisiana, Fourth Circuit.
October 27, 1994.
*1216 Harry F. Connick, Dist. Atty., Mark D. Pethke, Asst. Dist. Atty., New Orleans, for appellee.
Sheila C. Myers, New Orleans, for appellant.
Before SCHOTT, C.J., and BYRNES and WALTZER, JJ.
BYRNES, Judge.
Alton P. Cureaux appeals his conviction of attempted possession of cocaine with intent to distribute, as well as his conviction as a second offender for which he was sentenced to 30 years at hard labor. We affirm.
On October 3, 1991, at approximately 1:45 p.m., Officers Larry Matthews and Kenneth Taylor responded to a dispatch call and drove to the intersection of Spain and North Derbigny. When they were a block away, the officers saw the defendant place a paper bag into the base of a hollow tree and walk across the street to an abandoned house. The officers testified that no one else, other than a young woman standing on the porch of the abandoned house, was in the area.
The officers parked their car and exited. Officer Matthews detained the defendant and the young woman while Officer Taylor retrieved the bag from the base of the tree. Officer Taylor testified that there were no other bags in the tree. The bag contained 42 rocks of crack cocaine. The defendant was searched, and $324.00 was found in his front pocket.
Dawn Robinson testified that as she left a store at the corner of Derbigny and Spain, she saw the police arrive and stop the defendant. She also saw them remove a bag from a tree, and she testified that before the police stopped him, the defendant was on the other side of the street from the tree. She also testified that there were quite a few people in the area but that they left when the police arrived.
Michael Hubbard testified that he lived at the corner of Spain and Prieur and that he saw a police car stop at the corner of Spain and Derbigny. He saw police officers order the defendant to halt while several people at *1217 the corner scattered. He also testified that he saw one of the police officers remove a paper bag from the base of a tree. Hubbard further testified that he told the police that they had the wrong man and that the right ones were the youngsters who were running away.
Nicole Augustine testified that defendant had come to visit her that day and that there were several people on the corner at the time the police arrived. She also testified that she did not see him put anything inside a tree.
The defendant was charged with possession of cocaine with intent to distribute. Following a mistrial on March 17, 1992, the defendant was found guilty of attempted possession of cocaine with intent to distribute after a jury trial on August 17, 1992. The defendant admitted to being a second offender on September 1, 1992, and he was sentenced to 30 years at hard labor.
After the appeal was lodged, defendant moved for a new trial on the basis of newly discovered evidence on August 18, 1993. The case was remanded to the trial court, a hearing was held on November 2 and 16, 1993, and the trial court denied the motion on November 30.
On appeal Alton P. Cureaux contends that: (1) the trial court erred in denying his motion for new trial; and, (2) the prosecutor commented improperly during closing argument.
The defendant complains that the trial court erred in denying his motion for new trial which was based on newly discovered evidence related to the credibility of Officer Kenneth Taylor. Officer Taylor testified at trial that he had been a police officer for four years. Several months after the trial, an article appeared in the Times-Picayune that stated that Officer Taylor had been suspended from the New Orleans Police Department from September, 1988 to January, 1990 for cheating.
The defendant argues that he had no reason to suspect that such information about Officer Taylor existed; thus, he contends his failure to obtain the information before trial cannot be attributed to a lack of due diligence. He further argues that because the case was a swearing match between the state's witnesses, the two police officers, and the three defense witnesses, the credibility of Officer Taylor was an important issue. The defendant asserts that the newly discovered impeachment evidence would have resulted in a different verdict.
To obtain a new trial under Article 851(3), the defendant has the burden of showing: (1) the new evidence was discovered after trial; (2) the failure to discover the evidence at the time of the trial was not caused by the lack of diligence; (3) the evidence is material to the issues at trial; and, (4) the evidence is of such a nature that it would probably have changed the verdict. The test for determining whether new evidence warrants a new trial is not whether another jury might bring a different verdict but, rather, whether the new evidence is so material that it ought to produce a verdict different from that rendered at trial. State v. Molinario, 400 So.2d 596 (La.1981); State v. Wright, 598 So.2d 561 (La.App. 4th Cir. 1992). To reverse the denial of a motion for new trial, the reviewing court must find that the denial was arbitrary and a palpable abuse of the trial court's discretion. State v. Clark, 581 So.2d 747 (La.App. 4th Cir.1991), writ denied 590 So.2d 63 (La.1991). Great weight is to be attached to the exercise of the trial court's discretion, which should not be disturbed even if reasonable persons could differ as to the propriety of the trial court's action. Id.
When he denied the motion for new trial, the trial judge stated:
The Court finds that the issue as to how long the officer may have served and whether or not he was suspended for some period of time in the course of his initial service and then reinstatement, the issue of whether he cheated on the exam or not that led to this suspension, dismissal and ultimate reinstatement would be a collateral issue as I appreciate Article 607 of the evidence code and the jurisprudence that preceded and has followed that Article's creation, such is not the type of evidence that is subject to impeachment, more particularly *1218 collateral issues, collateral evidence.[1]...
Although the defendant could impeach Officer Taylor's testimony that he had been a police officer for four years with extrinsic evidence that Officer Taylor had been suspended from the police force for some sixteen months, the defendant could not have gone into the basis for the suspension under LSA-C.E. art. 608 B. Article 608 B provides that: "Particular acts, vices, or courses of conduct by a witness may not be inquired into or proved by extrinsic evidence for the purpose of attacking his character for truthfulness, other than conviction of crime as provided in Articles 609 and 609.1 or as constitutionally required." There is a real risk that once the fact of Officer Taylor's suspension is raised, the reason for the suspension (Officer Taylor's alleged cheating on an examination) would be explored. In turn, the reasons for Officer Taylor's reinstatement would be delved into. As a result, evidence of these collateral issues related to Officer Taylor's credibility is substantially outweighed by the risks of undue consumption of time, confusion of the issues, or unfair prejudice. We find no abuse in the trial court's discretion in denying the motion for new trial.
The defendant also contends that the prosecutor improperly commented during closing argument on the defendant's exercise of his constitutional right not to testify. He argues that the prosecutor's comments indirectly referred to his failure to testify and that the prosecutor intended to emphasize his failure to take the stand.
During closing argument the prosecutor stated:
It's important to realize in this trial, or as in any other trial, the mere fact that you've heard two different versions of what happened or somemaybe even today, more than two versions, maybe three different versions by the people who testified for the Defense. But the mere fact that you heard two versions of what happened, that, in and of itself, is not reasonable doubt. I know Mr. Brandt addressed that to you in the very beginning. That's important to realize. That's important to realize. Because, after all, if that was reasonable doubt, then every time there is a trial the defendant could either take the stand himself or have a witness take the stand and say, "No, I didn't do it." and part of your role is to be fair and impartial, so you wouldn't know the police officers and you wouldn't know the people who testified for the defendant, most likely. And, therefore, it would be easy to say, "Well, I don't know either one, so I don't know who's telling the truth; therefore, he's not guilty. Therefore, there's reasonable doubt; therefore, he's not guilty." That's not how it works for that very reason.
The Defense could always get up and say, "I didn't do it." and then you'd have that same predicament if you went with that theory.
The trial judge overruled defendant's objection to the prosecutor's statements.
LSA-C.Cr.P. art. 770 provides that a mistrial shall be ordered when a remark or comment made by a prosecutor during trial or argument either directly or indirectly refers to the defendant's failure to testify in his own defense. When the reference to the defendant's failure to testify is a direct one, a mistrial must be declared regardless of the effect the statement had on the jury. For an indirect reference to mandate a mistrial, the prosecutor must have intended to draw the jury's attention to the defendant's failure to testify. State v. Clay, 612 So.2d 266 (La. App. 4th Cir.1992).
*1219 Rather than intending to focus the jury's attention on the defendant's failure to testify in the present case, the prosecutor was arguing to the jury that they could not conclude that reasonable doubt existed based solely on a denial of guilt by a defendant. The prosecution did not refer to the defendant Alton Cureaux but referred to defendants in general. The prosecutor stated: "... if that was reasonable doubt every time there is a trial the defendant could either take the stand or have a witness take the stand and say, `No, I didn't do it.'" The prosecutor referred to any trial and to any defendant whose trial strategy was to provide testimony to claim innocence. The prosecutor's comments were not an impermissible reference to the defendant's failure to testify in the present case.
Accordingly, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] LSA-C.E. art. 607 D provides:

D. Attacking credibility extrinsically. Except as otherwise provided by legislation:
(1) Extrinsic evidence to show a witness' bias, interest, corruption, or defect of capacity is admissible to attack the credibility of the witness.
(2) Other extrinsic evidence, including prior inconsistent statements and evidence contradicting the witness' testimony, is admissible when offered solely to attack the credibility of a witness unless the court determines that the probative value of the evidence on the issue of credibility is substantially outweighed by the risks of undue consumption of time, confusion of the issues, or unfair prejudice.