736 So.2d 318 (1999)
STATE of Louisiana.
v.
Alton P. CUREAUX.
No. 98-KA-0097.
Court of Appeal of Louisiana, Fourth Circuit.
May 26, 1999.
*319 Harry F. Connick, District Attorney, Joseph E. Lucore, Assistant District Attorney, Orleans Parish, New Orleans, Louisiana, Counsel for Plaintiff/Appellee.
C. Gary Wainwright, New Orleans, Louisiana, Counsel for Defendant/Appellant.
Court composed of Judge JOAN BERNARD ARMSTRONG, Judge JAMES F. McKAY, III and Judge MICHAEL E. KIRBY.
ARMSTRONG, Judge.

STATEMENT THE CASE
On October 3, 1991, the State filed a bill of information charging the defendant, Alton Cureaux, with possession of cocaine with intent to distribute. At his arraignment he entered a not guilty plea. His first trial, held on March 17, 1992, ended in a mistrial when the jury was unable to reach a verdict. The defendant was retried on August 17, 1992, and a twelve-member jury found him guilty of attempted possession of cocaine with intent to distribute. The State filed a multiple bill of information; and, on September 1, 1992, the defendant admitted to being a second felony offender. He was sentenced to serve thirty years at hard labor, and his appeal was granted. After the appeal was lodged, the defendant moved for a new trial on the basis of newly discovered evidence. The matter was remanded to the district court; and, on November 30, 1993, the motion was denied. This court affirmed the conviction and sentence. State v. Cureaux, 93-0838 (La.App. 4 Cir. 10/27/94), 645 So.2d 1215 writ den. 94-2899 (La.3/24/95), 651 So.2d 287.
On May 30, 1996, a second motion for new trial was filed by the defendant. A hearing on the motion was held on July 23, 1996. Thereafter, the defense requested a continuance to file memorandum, which was granted. The defense and the state filed memorandum on October 24, 1996. The motion for new trial was denied by the district court on December 19, 1996, and the appeal was granted.
Under La.C.Cr.P. art. 853, a motion for new trial must be filed and disposed of before sentence. An exception is made *320 when the motion is based upon newly discovered evidence. A motion for new trial based on newly discovered evidence may be filed within one year after verdict or judgment of the trial court even though a sentence has been imposed or a motion for new trial has been previously filed. Here, defendant's second motion for new trial is untimely under Article 853. Therefore, as noted by the state, defendant's claim should have been raised in an application for post-conviction relief. Under La. C.Cr.P. art. 930.6, review of the district court's denial of an application for post-conviction relief is by supervisory writ. Accordingly, this court will treat this appeal as a timely filed application for writ of review. State v. Banks, 444 So.2d 1243 (La.1984).

STATEMENT OF FACTS
The statement of the facts is taken from the original appeal opinion:
On October 3, 1991, at approximately 1:45 p.m., Officers Larry Matthews and Kenneth Taylor responded to a dispatch call and drove to the intersection of Spain and North Derbigny. When they were a block away, the officers saw the defendant place a paper bag into the base of a hollow tree and walk across the street to an abandoned house. The officers testified that no one else, other than a young woman standing on the porch of the abandoned house, was in the area.
The officers parked their car and exited. Officer Matthews detained the defendant and the young woman while Officer Taylor retrieved the bag from the base of the tree. Officer Taylor testified that there were no other bags in the tree. The bag contained 42 rocks of crack cocaine. The defendant was searched, and $324.00 was found in his front pocket.
Dawn Robinson testified that as she left a store at the corner of Derbigny and Spain, she saw the police arrive and stop the defendant. She also saw them remove a bag from a tree, and she testified that before the police stopped him, the defendant was on the other side of the street from the tree. She also testified that there were quite a few people in the area but that they left when the police arrived.
Michael Hubbard testified that he lived at the corner of Spain and Prieur and that he saw a police car stop at the corner of Spain and Derbigny. He saw police officers order the defendant to halt while several people at the corner scattered. He also testified that he saw one of the police officers remove a paper bag from the base of a tree. Hubbard further testified that he told the police that they had the wrong man and that the right ones were the youngsters who were running away.
Nicole Augustine testified that defendant had come to visit her that day and that there were several people on the corner at the time the police arrived. She also testified that she did not see him put anything inside a tree.

State v. Cureaux, 93-0838, p. 1, 2 (La. App. 4 Cir. 10/27/94), 645 So.2d 1215, 1216-17.

ASSIGNMENT OF ERROR:
By his sole assignment of error, the defendant asserts that the district court erred by denying his second motion for new trial, which was based on newly discovered evidence. The new evidence consists of the testimony of Freddie Kegler, A.K.A "Mookie," that the drugs seized from the base of the tree were his and did not belong to defendant.
La.C.Cr.P. article 851 provides the grounds for granting defendant's motion for new trial.
The court, on motion of the defendant, shall grant a new trial whenever:
* * * *
(3) New and material evidence that, notwithstanding the exercise of due diligence by the defendant, was not discovered before or during the trial, is *321 available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty.
In order to obtain a new trial based on newly discovered evidence, the defendant has the burden of showing (1) the new evidence was discovered after trial, (2) the failure to discover the evidence at the time of trial was not caused by lack of diligence, (3) the evidence is material to the issues at trial, and (4) the evidence is of such a nature that it would probably have produced a different verdict.
The trial court has much discretion in ruling on a motion for new trial. However, if the trial court exercises this discretion arbitrarily and the judgment is unjust, the reviewing court should set aside the judgment and order a new trial. State v. Hammons, 597 So.2d 990 (La. 1992); State v. Knapper, 555 So.2d 1335 (La.1990). Furthermore, it is not for the trial judge to weigh the evidence or to determine the guilt or innocence of the defendant; rather the judge must ascertain whether another jury presented with all the evidence, including the newly discovered evidence, would probably reach a different verdict. Knapper; State v. Prudholm, 446 So.2d 729 (La.1984); State v. Talbot, 408 So.2d 861 (La.1980).
At the hearing on the defendant's motion for new trial held on July 23, 1996, the alleged owner of the drugs, Mr. Kegler, testified that he was on the porch of the abandoned house when he saw the police, and he ran. He stated that he always kept his stash in the tree and that he felt bad that his uncle, the defendant, was arrested for his stash; but, he explained that he did not inform the authorities of the mistake because he is a homosexual. Mr. Kegler stated that he is often mistaken for a woman because of his mannerisms. At the time, he was afraid of his physical well being if placed in jail. He has no prior convictions. Nonetheless, he stated that he could no longer stand the guilt of seeing an innocent man in jail, and he decided to come forward.
Mr. Kegler further testified that the defendant was not aware of his drug activities and neither was the defendant's son. The defendant's son would hang out in that area too, and the defendant was looking for his son when the police arrived on the scene.
In rendering its ruling on December 19, 1996, the district court pretermitted any discussion of due diligence in discovering the evidence. Instead, the court found the testimony of Mr. Kegler incredible, and the judge felt that anything defendant would present to the court was a mockery. Apparently, the defendant had feigned paralysis during his trial, and the judge had chastised him to stop. When his attorney countered that the defendant suffered from a documented mental disability and that possibly the stress associated with the trial caused him to respond the way he did, the trial judge replied that he observed that the defendant's body movements were normal during recesses of trial. The defense attorney also argued that the defendant's feigned paralysis was not a legal fact in the trial, and the judge agreed. Yet, he ruled that despite the feigned paralysis, there was no legal or factual basis to grant the defendant relief.
The defendant argues that he should be granted a new trial in light of the confession by Mr. Kegler because the case boiled down to a swearing match between the two police officers and the three lay witnesses. The defendant specifically notes that Mr. Hubbard was as credible a witness as the "perjurious" Officer Taylor and that Mr. Hubbard testified that he informed the police that they had the wrong person.[1] *322 Defense counsel even speculates that Mr. Kegler may have been the woman police officers saw on the porch when they arrived on the scene.[2]
The Supreme Court has ordered a new trial when, after the defendant was convicted, a third person confessed to the crime, and other circumstances were present to cast doubt on the defendant's guilt. State v. Hammons, 597 So.2d 990 (La. 1992). On the other hand, courts are generally skeptical when after the defendant has been found guilty, another participant in the crime makes a statement exculpating the defendant. See e.g., State v. Perique, 340 So.2d 1369 (La.1976); State v. Bell, 242 La. 585, 137 So.2d 342 (1961) (on rehearing); State v. Ruffin, 475 So.2d 1375 (La.App. 5 Cir.1985).
In the instant case, the defendant likens his case to Hammons, yet we find that the case may be distinguished. In Hammons, the defendant was convicted of armed robbery of a drug store. He was alleged to have stolen dilaudid from the pharmacy, and four eyewitnesses testified that the robber had a closely-cropped beard or no beard at all. A photograph of the defendant taken eight days after the robbery showed a full, thick, long and bushy beard thereby casting doubt on the identification of defendant by the witnesses as the robber. In addition, a fingerprint on an adhesive tape casing handled by the robber was not the defendant's print.
The testimony of twelve witnesses, including a police officer and five unbiased persons who were not related to the defendant, established his presence in Pritchard, Alabama before, during and after the time of the robbery. In fact, the officer's testimony established that it was not feasible time-wise for defendant to have robbed the drug store at 7:00 p.m. and then appeared at the scene of an accident outside of Pritchard with his tow truck at 9:12 p.m.
Two men were involved in the robbery of the drug store. The newly discovered evidence consisted of statements made by one of the actual perpetrators confessing to the robbery. The statements were made to a person named Steve Brown, who also recorded some of the statements. The Supreme Court found the statements made by the perpetrator trustworthy because he told Brown in the midst of a deal to sell the dilaudid to Brown. Further, the perpetrator did not know Hammons and had no motivation to make a false statement for his benefit. The statements were made on several occasions, and those that were recorded, contained a voice that was identifiable. Finally, the perpetrator, who actually entered the drug store, bore a striking resemblance to Hammons.
In finding that Hammons was entitled to a new trial, the Court found that the new evidence would have changed the verdict, because if it had been admitted at trial, it would have discredited the eyewitnesses' testimony, which was already undermined.
Unlike in Hammons, the identification of the defendant here is not at issue. Even though the defendant attempts to discredit the testimony of Officer Taylor, both officers testified that they observed the defendant place the bag in the tree. The fact that the officers may have arrested the wrong person was already before the jury through the testimony of Mr. Hubbard at trial.
Further, the element of trustworthiness of the confession in Hammons appears to be lacking here. Though his confession *323 was against his penal interest, Mr. Kegler waited four years to confess to the crime. He represented that neither the defendant or his son knew of his drug activities, but his representations seem specious. The defendant's son hung out in the same area.[3] In addition, the trial judge could have easily found that Mr. Kegler possessed the motivation to make the confession because he is the defendant's nephew and has no prior convictions. See generally State v. Hubbard, 30,604 (La.App. 2 Cir. 4/8/98), 711 So.2d 393, 397-398.
Finally, during a search of the defendant, the officers found $324.00 in his pants pocket in denominations consistent with drug sales: ten twenties, five ten dollar bills, thirteen five dollar bills, and nine one dollar bills.
Thus, because of the apparent lack of reliability in Mr. Kegler's confession, it would seem unlikely to affect the verdict. We find that the district court did not abuse its discretion in denying the motion for new trial.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Defendant's first motion for new trial, which was based on newly discovered evidence, related to the credibility of Officer Taylor. Officer Taylor testified at trial that he had been a police officer for four years. Several months after trial, an article appeared in the Times-Picayune that stated that Officer Taylor had been suspended from the New Orleans Police Department from September of 1988 to January of 1990 for cheating. Officer Taylor allegedly cheated on an exam. Defendant argued on appeal that the district court erred in denying the motion for new trial. No abuse of the district court's discretion was found. Cureaux, 93-KA-0838 p. 3-5 (La.App. 4 Cir. 10/27/94), 645 So.2d 1215 at 1217, 1218.
[2] Counsel's speculation appears incorrect. As revealed by the trial transcript, one of the lay witnesses, Nicole Augustine, knew the woman. She knew her as "Petey.". Further, the woman was also arrested, but on a fugitive warrant out of Jefferson Parish.
[3] Defendant alleges that he and his family never relented in their search for the owner of the drugs since he was arrested; however, these facts would appear to cast doubt on whether due diligence was exercised by defendant.