h Chief Judge WILLIAM H. BYRNES III.
STATEMENT OF THE CASE
Defendant, Larry Broyard, was charged by bill of information on May 30, 1991 with armed robbery, a violation of La. R.S. 14:64. Defendant pleaded not guilty at his June 4, 1991 arraignment. The trial court denied defendant’s motion to suppress the identification on May 4, 1992, on which date it also heard testimony presented by the State concerning its notice of intent to use evidence of other bad acts by defendant. On May 8, 1991, the trial court granted the State’s motion. This court subsequently denied defendant’s writ application as to that ruling.[1] On May 20, 1993, a jury found defendant guilty as charged. On September 24, 1993, the State filed a bill of information charging defendant as a fourth-felony habitual offender. On January 27, 1994, the trial court adjudicated defendant a third-felony habitual offender. On February 10, 1994, the trial court sentenced defendant to seventy years at hard labor without benefit of parole, probation or suspension of sentence. The trial court granted defendant’s motion for appeal. On August 31, 1995, this court denied defendant’s writ application, noting that his appeal was pending.[2] On November 13, 1996, this court affirmed | ^defendant’s conviction, but vacated the habitual offender adjudication and remanded defendant for resentencing as a second-felony habitual offender.[3] On May 23, 1997, this court granted defendant’s writ application, ordering that the trial court resentence defendant as a second-felony habitual offender. On October 21, 1997, the trial court resentenced defendant to fifty years at hard labor, without benefit of parole, probation or suspension of sentence. Defendant filed an application for post conviction relief on October 21, 1997. On December 17, 1997, this court granted defendant’s writ application and ordered the trial court to consider defendant’s ap *849 plication within sixty days.[4] Following three hearings, the trial court denied defendant’s application for post conviction relief, and a motion for new trial, on January 18, 2000. The trial court granted defendant’s “motion for appeal” on that date.
The record was lodged with this court on October 18, 2000, and supplemented in January and April 2001 with various transcripts. Defendant’s first appellate counsel filed a brief on November 13, 2000. The State filed its response on December 22, 2000. Defendant filed a pro se brief on January 9, 2001, and a rebuttal to the State’s response on February 12, 2001. Defendant’s second appellate counsel, appointed after the withdrawal of his first appellate counsel, filed a supplemental brief on August 16, 2001.
There is no right to appeal from a judgment denying relief on an application for post conviction relief. La.C.Cr.P. art. 930.6. Rather, the petitioner may invoke the supervisory jurisdiction of the court of appeal. Id. Although the briefs filed by both counsel for defendant and defendant pro se are captioned as applications for 13supervisory writs, this proceeding was filed as an appeal. This court has treated such “appeals” as timely filed applications for supervisory review. See State v. Cureaux, 98-0097, p. 2 (La.App. 4 Cir. 5/26/99), 736 So.2d 318, 320. Accordingly, this court will treat defendant’s “appeal” as a timely filed application for supervisory writs.

FACTS

The following facts were set forth in this court’s original decision:
On January 17, 1991, at 10:45 p.m., there was a simple robbery at the Time Saver store at Broadway and Claiborne in New Orleans. At 1:15 a.m. the next morning, there was an armed robbery at the Time Saver store at 2200 Robert E. Lee in New Orleans. The videotape machine at the Robert E. Lee store was not operating that evening. However, based on the descriptions given by the victims, Time Saver security officer Michael Stewart believed that the same perpetrator might have committed both offenses. Detective Claude Flot of the NOPD Robbery Division and Stewart showed the videotape from the first robbery to Robert Caminita, the cashier and victim of the second robbery. He identified the person on the tape as the person who attempted to stab him with a screwdriver and who took money from his cash register.
The videotape was turned over to Cri-mestoppers to be released to the media. As a result of the tape’s use by the media, two calls came in to Crimestop-pers. Detective Flot then obtained a photo of the appellant and five fill-ins with similar facial characteristics which he took to Caminita’s residence. Cami-nita made a positive identification of the appellant as the perpetrator. An arrest warrant was issued for the appellant, who then turned himself in to a police station.
Due to a heavy work schedule on one occasion and illness on a second occasion, Caminita was unable to attend a physical lineup which included the appellant. As a result, a photo was taken of the participants of the second lineup. Another identification was then conducted, this time at the district attorney’s office, at [¿which Caminita identified the appellant as the perpetrator from the photo of the physical lineup.
The appellant’s fiancee, Janice Denni-son, testified that the appellant was with *850 her in Lacombe in the evenings in the month of January 1991. She could not recall the specific evening of January 17, but did recall that the appellant got a ride to and from his job at a dry cleaners in Slidell in the daytime, then stayed with her at a house in Lacombe, where he watched TV or worked on cars with his father in the evenings, as they had no transportation and there was nothing else to do in Lacombe. Dennison further testified that the appellant did not have a beard during the time she was with him in Lacombe. She testified that he had a beard when she first met him, but could not recall exactly when he shaved it off. The prosecutor then showed Dennison photos of the appellant used for the photo lineup and the physical lineup. Dennison said the photos looked like him, except that she never knew him with his beard that heavy. She further testified that he never had a mustache in the time she knew him.

FIRST APPELLATE COUNSEL ASSIGNMENT OF ERROR NO. 1

In the first assignment of error raised by defendant’s first appellate counsel, defendant claims that the trial court erred when ruling on his application for post conviction relief by failing to apply a rebuttable presumption that he was denied effective assistance of counsel in the trial court. It can be noted that defendant raised the issue of ineffective assistance of counsel in his original appeal, citing only trial counsel’s failure to effectively cross examine Det. Flot. This court found no merit to that assignment of error.
Defendant cites State v. Peart, 92-0907 (La.7/2/93), 621 So.2d 780, for the proposition that there is established a rebuttable presumption that indigent defendants in Section E of the Criminal District Court for the Parish of Orleans who were represented by then indigent defense counsel Richard Teissier did not receive effective assistance of counsel. In Peart, the defendant’s indigent counsel, |fiRichard Teissier, filed a pre-trial claim essentially urging that he could not provide effective assistance of counsel to his clients, Peart and others, due to his oppressive caseload and the inadequate resources of the Orleans Parish Indigent Defender Program. The trial court agreed. On writs taken by the State, the Louisiana Supreme Court concluded:
[Hjaving found that evidence in the record before us shows that the provision of indigent defense services in Section E of Orleans Criminal District Court is in many respects so lacking that defendants who must depend on it are not likely to be receiving the reasonably effective assistance of counsel the constitution guarantees, we find that a rebut-table presumption arises that indigents in Section E are receiving assistance of counsel not sufficiently effective to meet constitutionally required standards. See State v. Smith, 140 Ariz. 355, 681 P.2d 1374 (1984). This presumption is to apply prospectively only; it is to apply to those defendants who were represented by attorney Teissier when he filed the original “Motion for Relief’ who have not yet gone to trial; and it will be applicable to all indigent defendants in Section E who have OIDP attorneys appointed to represent them hereafter, so long as there are no changes in the workload and other conditions under which OIDP assigned defense counsel provide legal services in Section E. [Emphasis added. Footnotes omitted.]
621 So.2d at 791.
Defense counsel representing defendant in the trial court on his application for post conviction relief conceded to the trial court *851 during an August 10, 1999 hearing that defendant was not entitled to the rebutta-ble presumption of ineffective assistance of counsel set forth in Peart. Nevertheless, defendant asserted in his application for post conviction relief that he was entitled to the Peart presumption.
The presumption does not apply to defendant because the Peart decision was decided after defendant had gone to trial. The record in the instant case reflects that Richard Teissier was appointed to defendant’s case on November 20, 1991, and | fihe represented defendant at his May 20, 1993 trial. The State asserts that the docket master in the Peart case reflects that Mr. Teissier’s “Motion for Relief’ was filed on August 21, 1991, although neither the record in the instant case nor the decision in Peart specifically refer to the date that motion was filed. It can be noted that in the Peart decision the Louisiana Supreme Court cited Mr. Teissier’s caseload statistics for the period between January 1 and August 1, 1991. The State’s writ applications in Peart were filed in 1992. It is likely that Mr. Teissier filed his “Motion for Relief’ prior his being appointed to represent defendant. This would remove him from the application of the Peart presumption. More importantly, the Supreme Court rendered its decision in Peart on July 2, 1993, approximately six weeks after defendant’s trial and conviction. Thus, defendant had gone to trial before Peart was decided. Accordingly, as the rebuttable presumption of ineffective assistance of counsel established by Peart applies only prospectively to those defendants who had not gone to trial at the time Peart was decided, the presumption does not apply to defendant in the instant case.
There is no merit to this assignment of error.

FIRST APPELLATE COUNSEL ASSIGNMENT OF ERROR NO. 2

In this alternative assignment of error by defendant’s first appellate counsel, defendant raises a claim of ineffective assistance of counsel on three grounds.
Ineffective assistance of counsel claims are reviewed under the two-part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). State v. Brooks, 94-2438, p. 6 (La.10/16/95), 661 So.2d 1333, 1337 (on rehearing); State v. Robinson, 98-1606, p. 10 (La.App. 4 Cir. 8/11/99), 744 So.2d 119, 126. In order to prevail, the defendant must show both that: (1) counsel’s ^performance was deficient; and (2) he was prejudiced by the deficiency. Brooks, supra; State v. Jackson, 97-2220, p. 8 (La.App. 4 Cir. 5/12/99), 733 So.2d 736, 741. Counsel’s performance is ineffective when it is shown that he made errors so serious that counsel was not functioning as the “counsel” guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 686, 104 S.Ct. at 2064; State v. Ash, p. 9 (La.App. 4 Cir. 2/10/99), 729 So.2d 664, 669. Counsel’s deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant must show that there is a reasonable probability that, but for counsel’s deficient performance the result of the proceeding would have been different; “[a] reasonable probability is a probability sufficient to undermine confidence in the outcome.” Strickland, 466 U.S. at 693, 104 S.Ct. at 2068; State v. Guy, 97-1387, p. 7 (La.App. 4 Cir. 5/19/99), 737 So.2d 231, 236.
This court has previously recognized that if an alleged error falls “within the ambit of trial strategy” it does not “establish ineffective assistance of counsel.” State v. Bordes, 98-0086, p. 8 (La.App. 4 Cir. 6/16/99), 738 So.2d 143, 147, *852 quoting State v.. Bienemy, 483 So.2d 1105, 1107 (La.App. 4 Cir.1986). Moreover, as “opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel’s trial decisions. Neither may an attorney’s level of representation be determined by whether a particular strategy is successful.” Id. quoting State v. Brooks, 505 So.2d 714, 724 (La.1987).
A. Failure to investigate potential witnesses.,
Defendant first claims that Mr. Teissier’s performance was deficient in that he failed to investigate potential witnesses to contradict the State’s proposed | ^identification of defendant. At a December 1998 hearing on his post conviction relief claims, defendant testified concerning prospective witnesses, his father, stepmother and three individuals from his alleged place of employment, who could have testified that he did not have a beard on the date the armed robbery was committed. The robber depicted in the photos of the Broadway St. Time Saver robbery had a beard. The record contains a witness list filed in the record on April 17, 1991, requesting that subpoenas be issued to the seven individuals listed for appearance at defendant’s preliminary hearing, then scheduled for April 24. It is not known whether the witnesses appeared at this hearing. In any case, Mr. Teissier testified at the December 1998 hearing on defendant’s post conviction relief claims that he was unaware of that witness list. Mr. Teissier questioned whether that witness list had been part of the record at the time of trial, stating that it dated to when defendant’s case was still under the jurisdiction of the magistrate court, and noting that all magistrate section paperwork does not necessarily become part of the record for the Criminal District Court. Mr. Teis-sier stated that if he had seen the list he would have subpoenaed those witnesses.
Only one of the witnesses, Janice Denni-son, defendant’s fiancée, testified at trial. She was the only witness to testify on behalf of defendant. Ms. Dennison said that she lived in New Orleans but in late December 1990 came to live with defendant at the Lacombe home of his father and stepmother. She stayed until approximately February 4, 1991. She said defendant was with her in Lacombe after he got off work during the month of January 1991, when the robbery occurred. She claimed that defendant did not have a beard during that period, although she said he had a beard when she met him in 1988 or 1989. She first estimated that defendant had the beard for two years after she met him, but when ^pressed further stated that she could not recall when he shaved it off. She reiterated several times that he did not have a beard during the time she lived with him in Lacombe. Ms. Dennison also testified that defendant did not have a car, and got a ride to and from work at a dry cleaning business in Slidell everyday, after which he would come home and work on cars with his father. Defendant testified at the December 1998 post conviction hearing that besides his father and stepmother, his employer, the employer’s wife and the secretary at the dry cleaning establishment could have been called as witnesses to testify on his behalf. He claimed these witnesses would have directly contradicted the State’s case, presumably by testifying that he was clean shaven at the time the robbery. Following the conclusion of the December 1998 hearing at which the witness list was discussed, the trial court left the matter open so that defense counsel could procure the attendance of these purported defense witnesses at a hearing.
*853 At the start of an August 10, 1999 post conviction relief hearing, it was stipulated that three witnesses, apparently defendant’s former employer, the employer’s wife and the company secretary, had been subpoenaed, and that the employer had “honored” the subpoena. However, the only witness from the April 1991 witness list to testify at this hearing was defendant’s stepmother, Frances Cousins. She testified that she had never been contacted by any defense attorney or investigator regarding defendant’s ease in 1991. She stated that on the day of the robbery defendant was living at her home with her and defendant’s father, and working at Corporate Cleaners. Mrs. Cousins claimed that defendant did not have a car, and that either she or defendant’s father would drop him off and pick him up. When asked whether during the early part of January 1991 defendant had a beard, she said not as far as she could remember. Mrs. Cousins was asked whether | ^defendant had a girlfriend in January 1991, and she said she believed that he had, but that she lived in New Orleans and did not have transportation either. She was asked whether that girlfriend resided with her and defendant’s father, and she replied “Not to my memory.” However, queried as to that answer, Mrs. Cousins replied that she did not remember.
The issue is whether there is a reasonable probability that but for Mr. Teissier’s failure to call defendant’s stepmother Mrs. Cousins as a witness at his trial, there is a reasonable probability that the result of the proceeding would have been different. Mr. Caminita, the Time Saver cashier on Robert E. Lee Blvd. who was robbed, testified that the robber came into the store, walked to the beer cooler, picked up a beer, walked up to the counter, and gave him currency. After he had opened the cash register, he looked up to see the man lunging at his chest with a screwdriver. He backed up, and the man grabbed all of the money out of the cash register, approximately sixty-three dollars, and fled. Mr. Caminita said that thirty minutes after the robbery a Time Saver security representative asked him to view a videotape. At the time he viewed the videotape, he did not know where the tape had come from or what it was. It was the videotape from the Time Saver robbery on Broadway St. that had occurred within hours of the robbery of his store. He said he immediately told the Time Saver security representative that the robber in the video was the same person who robbed him. He said the lighting during the robbery was good and the man was no more than three feet away from him at the counter. He viewed the robber face to face for only ten seconds. However, he also said that he had the man in full view the entire time he was in the store, what he said was thirty seconds. He said he got a look at the side of the man’s face when he walked into the store. Mr. Caminita said he had a habit of looking at people Inbecause he worked the eleven to seven shift when most thefts occurred. When asked if he was certain that the robber depicted in the video was the same person who robbed him, Mr. Caminita replied in the affirmative, stating that he would never forget someone who tried to stab him in the chest with the screwdriver.
Mr. Caminita was shown six photos by Det. Flot on February 21, 1991, a little more than a month after the robbery. He turned them over one by one, and identified defendant’s photo as being that of the man who robbed him. On May 30, 1991, Mr'. Caminita also identified defendant in a photo that had been taken of the physical lineup he had been unable to attend because of illness. He identified defendant in court as the person who robbed him. Mr. Caminita admitted on cross examina *854 tion that during the ten second period he viewed the robber face to face the robber lunged at him and he stepped back to avoid being struck by the screwdriver. He admitted that he described the robber as five feet eight inches tall, weighing one hundred and seventy pounds. Mr. Cami-nita admitted that the physical lineup photo reflected that defendant was six feet two inches tall. However, Mr. Caminita said that he based his height description on a height grid on the doorway of the convenience store, and noted that defendant was running when he exited the store. Mr. Caminita admitted that he never described a bald spot on the top of the robber’s head, but conceded that the person depicted in another robbery had a bald spot.
Mr. Caminita’s testimony that defendant robbed him was very strong. It cannot be said that had defendant’s stepmother been subpoenaed and testified at his trial that to the best of her recollection defendant did not have a beard at the time of the robbery, and that he was working and had no car, that there is a reasonable probability the outcome of the trial would have been different. | ^Accordingly, Mr. Teissier’s failure to subpoena Mrs. Cousins did not constitute ineffective assistance of counsel.
B. Mr. Teissier’s case load was too high to render a meaningful defense.
Defendant next claims that his trial counsel was ineffective in that at all times his case load was too high to render a meaningful defense to his clients. Defendant notes that Mr. Teissier testified at the December 1998 post conviction hearing that the conditions cited in Peart, i.e., excessive caseload and inadequate resources, were those in effect during the period he represented defendant. In fact, Mr. Teissier testified that he probably did not consider defendant’s case as part of his regular caseload — defendant’s case was an addition to his already oppressive caseload. Defendant submits that this testimony coupled with the Peart conditions leads to the conclusion that Mr. Teis-sier’s performance was deficient.
However, this argument fails to raise a specific claim of ineffectiveness. In Peart, the court stressed that “any inquiry into the effectiveness of counsel must necessarily be individualized and fact-driven.” 621 So.2d at 788. The court stated: “[N]o general finding by the trial court regarding a given lawyer’s handling of other cases, or workload generally, can answer that very specific question as to an individual defendant the defense being furnished him.” Id. Defendant essentially seeks to have this court make a finding of ineffective assistance based on Mr. Teissier’s heavy caseload and inadequate resources. However, that would be in contravention of the Louisiana Supreme Court’s holding in Peart. To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the |13Sixth Amendment to the U.S. Constitution. State v. Jones, 99-2595, p. 7 (La.App. 4 Cir. 11/8/00), 773 So.2d 234, 239. This generalized allegation by defendant does not meet that burden.
C. Mr. Teissier referred to evidence of another crime committed by defendant and failed to object to the use of the photograph taken from the videotape of the earlier robbery.
Defendant first claims that his trial counsel’s performance was deficient in that counsel made a direct reference to the other robbery, the one at the Broadway St. Time Saver, during counsel’s cross examination of Louis Mounicou, the security supervisor for Time Saver Stores, Inc. Mr. Mounicou testified on direct examination *855 that he could not locate the videotape of the Broadway St. armed robbery viewed by Mi\ Caminita shortly after his Robert E. Lee Blvd. store was robbed. This testimony was necessary to establish why photographs taken from the videotape were being admitted instead of the videotape. This court had earlier ruled that the videotape of the prior robbery could be shown to the jury, but that its use was to be limited for identification purposes only, with no mention of the circumstances of the prior robbery in the presence of the jury.[5] Mr. Teissier cross examined Mr. Mounicou about the existence of a videotape from the robbery at the Robert E. Lee Blvd. store for which defendant was being tried, obviously to stress for the jury that no such videotape existed. Mr. Teis-sier then stated:
And the tapes from this one, this robbery, the separate robbery, or whatever you want to call it, the separate incident; there’s no tape either, right?
Defense counsel later referred to the photos of the Broadway St. robbery during his cross examination of Mr. Caminita, when he asked if the person 114depicted -in “these robberies”, had a bald spot in back of his head. Defendant does not cite this later reference as a basis of any of his claims of ineffective assistance of counsel. Thus, even assuming counsel’s performance was deficient in referring to the photos as being from another robbery when cross examining Mr. Mounicou, it cannot be said that defendant was prejudiced by this particular lapse, as counsel later referred to the photos as being from a robbery. That is, in light of the second reference, as well as the strength of the evidence as a whole, it cannot be said there is a reasonable probability that but for defense counsel’s error, the outcome of the proceeding would have been different.
Defendant also claims as a basis of this ineffective assistance counsel claim that defense counsel failed to object to the State’s use of the photos created from the videotape of the Broadway St. robbery. However, three questions into the direct examination of the first witness to testify at trial, Mr. Mounicou, defense counsel noted his objection to the photographs. The trial court noted that the objection was continuous. During Mr. Caminita’s testimony, the court again noted the continuing objection. Moreover, subsequently, defense counsel apparently introduced the photos to let the jury note that they depicted someone with a bald spot on the back of his head. Finally, while defendant notes that the photos reflected the time and date, Mr. Mounicou testified that the photos were printed directly from videotape, which he explained actually records a still frame every one to two seconds, rather than recording live action and movement. Thus, had the videotape itself been shown to the jury, there is every reason to believe that a time and date also would have been visible.
There is no merit to defendant’s claims of ineffective assistance of counsel.

SECOND APPELLATE COUNSEL ASSIGNMENT OF ERROR

In this assignment of error, defendant claims that the trial judge erred in relying on his own recollection of the criminal proceedings for his conclusion that defendant was effectively represented by counsel. As discussed below, the trial judge who denied defendant’s application for post conviction relief noted in making his ruling that he had presided over defendant’s prosecution, and specifically remembered that defendant received effective assistance of counsel. Defendant claims the *856 trial court could not have evaluated defense counsel’s alleged acts of omission in light of anything he observed in the courtroom. Defendant insinuates that the trial court did not apply the proper standard for assessing claims of ineffective assistance of counsel, but simply concluded that, based on his courtroom observations, defendant received effective assistance of counsel. However, the trial court did not state that its denial of defendant’s claims of ineffective assistance was based solely on his courtroom observations.
There is a presumption of regularity of judicial proceedings. See State v. Carlos, 98-1366, p. 6, n. 3 (La.7/7/99), 738 So.2d 566, 559, no. 3. “[E]very act of a court of competent jurisdiction shall be presumed to have been rightly done, till the contrary appears.” Id. quoting Parke v. Raley, 506 U.S. 20, 30, 113 S.Ct. 517, 523, 121 L.Ed.2d 391 (1992). It is presumed that the trial judge applied the well-accepted standard for assessing claims of ineffective assistance of counsel, and considered all of the claims set forth by defendant in his application and memorandum in support of defendant’s application for post conviction relief. The trial judge heard testimony at two post conviction relief hearings, and heard argument by counsel at a third hearing. It is presumed that the trial judge | ^considered this evidence presented by defendant in connection with his application for post conviction relief, as well as the record in the case, when making his ruling. The record indicates only that the trial judge’s recollection of the prosecution was simply a factor in his ruling. Common sense suggests that a trial judge’s recollection of the pretrial and trial proceedings would be an aid in determining whether there was a reasonable probability that but for an alleged deficiency in defense counsel’s performance, the outcome of the trial would have been different.
There is no merit to this assignment of error.

PRO SE ASSIGNMENTS OF ERROR NOS. 1&2

In his first two pro se assignments of error, defendant claims that the Louisiana Supreme Court’s limitation of the rebuttable presumption established in Peart to those defendants who were represented by Mr. Teissier when he filed the original “Motion for Relief’ who have not yet gone to trial is a violation of his equal protection and due process rights. However, defendant did not raise this issue in his application for post conviction relief, and the trial court never considered it. La.C.Cr.P. art. 930.6(A) provides that a defendant who is denied relief on an application for post conviction may invoke the supervisory jurisdiction of the court. Defendant did not seek any relief from the rule’s limited application in the trial court, or even discuss that he might not be entitled to the presumption. The trial court did not deny defendant any relief in this respect, and consequently there is no denial of relief with respect to this issue to review. Uniform Rules of Louisiana Courts of Appeal, Rule 1-3.
Moreover, the remarks made by the trial court in denying defendant’s application for post conviction relief make it clear that defendant had received Ineffective assistance of counsel even had it had it applied the Peart rebuttable presumption. As discussed above, the trial judge who presided over the post conviction relief hearings also presided over defendant’s pretrial and trial proceedings. The trial judge went to great lengths to address defendant’s claim of ineffective assistance, stressing that he recalled the case, and was confident that Mr. Teissier had rendered effective assistance of counsel to defendant. The reme *857 dy granted the defendants in Peart by the Louisiana Supreme Court was a remand to the trial court for individual hearings. At those hearings, the trial court was to apply the rebuttable presumption of ineffective assistance of counsel and weigh all of the evidence presented before making a finding as to whether the particular defendant was receiving the reasonably effective assistance of counsel the constitution required. In the instant case, it is clear that the trial court believed beyond any doubt that defendant received effective assistance of counsel, and that it would have reached that conclusion after consideration of the evidence regardless of whether or not it applied the rebuttable presumption.
There is no merit to this assignment of error.

PRO SE ASSIGNMENT OF ERROR NO. 3

In this assignment of error, defendant argues that he was denied the assistance of counsel, as Mr. Teissier was appointed to assist his then attorney, Joyce Watts, who essentially ended her representation of defendant after Mr. Teissier was appointed. Defendant avers that being represented by Mr. Teissier was the equivalent of having no counsel. There is no merit to this assignment of error.
Defendant was indicted on May 30,1991. He was arraigned on June 4 with counsel appointed for arraignment only. On June 14 counsel of record was listed liSas Gary Wainwright, and motion hearings were set for June 21. On June 21 the motion hearings were continued to August 12. On August 12, the hearings were continued to August 13, on which date Joyce Watts and another attorney were appointed to represent defendant. A minute entry reflects that Ms. Watts appeared with defendant on October 25, 1991 for the hearing on the motion to suppress the identification. However, the transcript reflects that Yvonne Hughes represented defendant at that hearing. The next minute entry is from November 20, 1991, when Mr. Teissier was appointed to “assist” Ms. Watts. The first hearing to be held subsequently was on May 4, 1992, when a Prieur hearing was held on the State’s motion to introduce evidence of other crimes — the videotape of the Broadway St. robbery. In addition, another witness testified as to the defendant’s motion to suppress the identification. The minute entry reflects that both Mr. Teissier and Ms. Watts were present. However, a transcript of the hearing reflects that only Mr. Teissier participated; Ms. Watts’ name is not listed as one of defendant’s attorneys on the cover of the transcript. The trial court denied the motion to suppress. Four days later, the court granted the State’s motion to introduce the videotape of. the other robbery. Mr. Teissier filed a motion to reconsider that ruling, and later applied to this court for supervisory writs as to that ruling. Although this court denied the writ application, it limited the introduction of the videotape to use for identification purposes only, with no mention of the crime itself.[6] The case was subsequently set and then reset a number of times for trial. Mr. Teissier was the sole counsel who represented defendant at the May 20, 1993 trial.
In an affidavit contained in the record, dated August 10, 1999, Joyce Watts averred that Mr. Teissier was appointed simply to assist her, not as co-counsel. She |1flclaimed in her affidavit that she considered Mr. Teissier as someone to assist her if she needed any help obtaining investigators, in getting pleadings typed, and in discussing the case from a strategic standpoint. However, if this is the case, *858 Ms. Watts does not explain why Mr. Teis-sier handled the only pretrial hearing conducted after his appointment, the motion to suppress the identification and Prieur hearing. Ms. Watts also mistakenly avers that Mr. Teissier “wrote no writs,” when the record is clear that he handled the only counsel-filed writ application in the case, pertaining to the grant of the State’s Pri-eur motion.
Defendant cites Mr. Teissier’s testimony at the December 1998 post conviction relief hearing. Mr. Teissier stated that he was not quite sure that he knew that he was going to be the lead trial attorney, and that he may have been put on the spot that day to try the case, having relied on the understanding that Ms. Watts was going to appear. Ms. Watts did not appear. However, Mr. Teissier testified that the reason he was appointed in the first place was because the trial court was frustrated with Ms. Watts’ failure to appear for scheduled court dates. If Mr. Teissier handled the Prieur hearing and second hearing on the motion to suppress the identification, it might be expected that he would be the lead attorney at trial. The record makes it clear that Mr. Teissier functioned as defendant’s primary counsel after his appointment in November 1991, at least insofar as court appearances were concerned.
There is no merit to the argument that Mr. Teissier’s representation of defendant effectively constituted no assistance of counsel at all.

PRO SE ASSIGNMENT OF ERROR NO. 4

lanln this pro se assignment of error, defendant alleges numerous grounds to support his claim of ineffective assistance of counsel. However, in his application for post conviction relief and memorandum in support thereof, defendant set forth only a limited number of grounds. Only those issues submitted to the trial court will be considered on appellate review. See Uniform Rules of Louisiana Courts of Appeal, Rule 1-3.
Defendant first cites Mr. Teissier’s “failure to investigate.” This argument refers to Mr. Teissier’s failure to subpoena witnesses, a claim that was discussed and found to be without any merit in Assignment of Error No. 2. Defendant also states that counsel was ineffective in failing to pursue his request to the court for a subpoena duces tecum directed to a bank in Slidell for a copy of a payroll check that he had cashed on the day of the robbery. However, defendant presented no evidence of the existence of any such check in connection with his application for post conviction relief, nor did his counsel at the post conviction relief hearing. Moreover, following the December 1998 post conviction relief hearing, the trial court allowed defendant the opportunity to subpoena his former employer, the employer’s wife and the employer’s secretary from the dry cleaners where he claimed to have been working earlier on the day of the robbery. It can be assumed that, if true, one of these persons could have testified that defendant was working there on that date and was paid that day. At the subsequent post conviction relief hearing, it was stipulated that those individuals had been subpoenaed, and that defendant’s employer apparently appeared. However, neither the employer nor his wife or the company secretary testified at the hearing. Defendant’s fiancée testified at trial that he worked everyday. Presumably, evidence of the cashing of the check would have aided his defense by demonstrating to the jury that he was gainfully employed and had money, possibly inferring that he would not have needed to rob anyone. However, in view of the strong identification evidence presented by the State, there *859 is not a reasonable probability that the outcome of the trial would have been different but for any deficiency in Mr. Teissier’s failing to obtain a microfiche copy of this cashed check.
Similarly, defendant claimed in his application for relief and here in his application for review that Mr. Teissier’s performance was deficient in that he failed to obtain a copy of defendant’s driver’s license, which he claims had been suspended. Defendant claims this evidence would have corroborated his “position of being physically unable to drive to New Orleans” to commit the robbery. To the contrary, this evidence would have informed the jury that defendant was capable of driving, but that his license to legally do so had been suspended—for an infraction- of the law. Defendant’s fiancée testified at trial that defendant did not have a car and had to be driven to and picked up from work.
Finally, defendant claimed in his application for post conviction relief that defense counsel was ineffective because he failed to read the transcript from the October 1991 hearing on defendant’s motion to suppress the identification, at which defendant was represented by Yvonne Hughes. Mr. Teissier admitted at the December 1998 post conviction relief hearing that he had not read the transcript. Defendant asserted that, consequently, Mr. Teissier failed to discover evidence that Det. Flot “perjured” himself regarding the physical lineup procedure. In defendant’s pro se application for supervisory review, he reiterates his claim that the transcript of the October 1991 hearing contained impeachment evidence. However, defendant fails to cite any such impeaching evidence or any perjured testimony by Det. Flot. Further, in addressing the issues defendant raised in his ^original appeal, this court found that a review of Det. Flot’s pretrial and trial testimony revealed no material inconsistencies, and thus, that trial counsel was not ineffective in cross examining the detective. There is no merit to this claim.
Lastly, defendant asserted in his application for post conviction relief that counsel was ineffective in failing to investigate the scene of the crime. However, Mr. Teissier testified at the December 1998 post conviction relief hearing that he thought he had gone to the scene of the armed robbery before the trial, describing what he recalled as an ordinary Time Saver. He admitted that he would be unable to testify as to the physical dimensions of the store. Defendant notes that the victim testified at trial that the distance from the checkout counter to the door was twenty-five feet. Defendant submits that the actual distance was six feet. Even assuming this was correct, the victim obviously estimated the distance. It cannot be said that there is a reasonable probability that but for Mr. Teissier’s failure to measure the distance when he visited the crime scene and present evidence of such in an effort to impeach the victim the outcome of the proceeding would have been different.
There is no merit to this assignment of error.

PRO SE ASSIGNMENT OF ERROR NO. 5

In this assignment of error, defendant claims that counsel who represented him in his appeal was ineffective. Defendant raised this issue in his application for post conviction relief, asserting three grounds, only two of which he argues in this application for supervisory review. Defendant argues several grounds for ineffective assistance of appellate counsel in the instant writ application that were Ugnot raised in his application for post conviction relief. These will not be addressed. Uniform Rules of Louisiana Courts of Appeal, Rule 1-3.
*860 Defendant claims that appellate counsel was ineffective in filing an appeal without viewing the still photographs printed from the videotape of the Broadway St. robbery. The photos were never lodged with this court, and apparently cannot be located. Defendant claims that had appellate counsel viewed the photos she would have learned that they “did not even purport to act as a ‘legitimate identification procedure.’ ” This argument has no merit, as the photos printed from the videotape of the Broadway St. armed robbery were not used in an identification procedure. The identity of the armed robber depicted in those photos was not known on the night of armed robbery, when the victim viewed the videotape from which the photos were printed. Mr. Caminita’s viewing of the videotape was not an identification procedure.
Defendant next argues that appellate counsel failed to conscientiously review a transcript of the October 1991 hearing on his motion to suppress the identification, claiming that the physical lineup conducted by police violated his right to assistance of counsel. Defendant cites State v. Hattaway, 621 So.2d 796 (La.1993), overruled in part, State v. Carter, 94-2859 (La.11/27/95), 664 So.2d 367, for the proposition that a physical lineup of the accused without the benefit of counsel “during adverse judicial criminal proceedings” violates the Sixth Amendment right to counsel. In Hattaway, the Louisiana Supreme Court determined that the right to counsel guaranteed by La. Const, art. I, § 13 attaches no later than the first court appearance or judicial hearing, rather than at the time of indictment as previously understood. See Stewart v. State, 95-2385, p. 1 (La.7/2/96), 676 So.2d 87. The court later recognized in Carter, supra, that the right to counsel under La. Const, art. I, § 13 and the right to counsel under the Sixth Amendment to the U.S. Constitution were coextensive in scope, operation and application. However, in Stewart, the Louisiana Supreme Court held that the rule of law enunciated in Hattaway did not apply retroactively to physical lineup identification proceedings conducted without benefit of counsel after the defendant’s first court appearance and appointment of counsel but prior to indictment. The court stated that the need for counsel at an identification lineup, before the State has obtained an indictment and set its course on prosecution, is not a “bedrock component” of a fair adjudication process, noting that it “is neither so likely to result in prejudice, nor so damaging if it does.” 95-2385, p. 4, 676 So.2d at 89.
Det. Flot testified at the October 1991 motion to suppress hearing that the photo lineup was shown to Mr. Caminita on February 21, 1991. Defendant was subsequently arrested for the armed robbery on April 2, 1991. Det. James Steincamp Jr. testified at the motion to suppress hearing that he conducted the physical lineup on April 23,1991. It is certain that defendant made his first court appearance between the time of his April 2 arrest and the April 23 physical lineup, as La.C.Cr.P. art. 230.1 mandates that an arrested person be brought before a judge within seventy-two hours from the time of his arrest where, if entitled, counsel shall be assigned to represent him. However, defendant was not indicted for the armed robbery until May 30, 1991, the day Mr. Caminita identified defendant for second time upon viewing a photo of the physical lineup. Therefore, even assuming that counsel had been appointed for defendant at his first appearance following his arrest, some three weeks prior to the physical lineup, and further assuming defendant was not represented by counsel at the lineup, pursuant Lgto Stewart, defendant was not denied his *861 right to counsel under either the Sixth Amendment or La. Const, art. I, § 13.
There is no merit to this assignment of error.

PRO SE ASSIGNMENT OF ERROR NO. 6

In this assignment of error, defendant claims that he was irreparably injured by an unduly suggestive identification procedure. However, this argument rests on the supposition by defendant that the victim’s viewing of the videotape of the Broadway St. robbery was an identification procedure. It was not. The identity of the robber depicted in that videotape was unknown at the time Mr. Caminita viewed it. Mr. Caminita simply said that the person depicted in the videotape was the same person who robbed him. This does not constitute an identification procedure, which contemplates an identification of a known individual.
There is no merit to this assignment of error.

PRO SE ASSIGNMENT OF ERROR NO. 7

In this assignment of error, defendant claims that he was denied due process during the evidentiary proceedings because the State argued that the standard in ineffective assistance of claims was that such claims must fail if the facts adduced at trial point so overwhelmingly at an accused’s guilt that even the most competent attorney would be unlikely to have obtained an acquittal.
There is a presumption of regularity of judicial proceedings. See State v. Carlos, 98-1366, p. 6, n. 3 (La.7/7/99), 738 So.2d 556, 559, no. 3. “[E]very act of a court of competent jurisdiction shall be presumed to have been rightly done, till the contrary appears.” Id. quoting Parke v. Raley, 506 U.S. 20, 30, 113 S.Ct. 517, 523, 121 L.Ed.2d 391 (1992).
There is no proof that the trial court applied anything but the correct standard as set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) — to carry his burden, the defendant must show that there is a reasonable probability that, but for counsel’s deficient performance the result of the proceeding would have been different; “[a] reasonable probability is a probability sufficient to undermine confidence in the outcome.” Strickland, 466 U.S. at 693, 104 S.Ct. at 2068.
There is no merit to this assignment of error.

DECREE

For the foregoing reasons, defendant’s appeal will be treated as a timely filed application for supervisory writs; that application is granted; and the judgment of the trial court denying defendant’s application for post conviction relief is affirmed.

APPEAL CONVERTED TO SUPERVISORY WRIT; WRIT GRANTED; RELIEF DENIED; DENIAL OF POST CONVICTION RELIEF AFFIRMED.

. State v. Broyard, unpub., 92-1748 (La.App. 4 Cir.1992).

. State v. Broyard, unpub., 95-1650 (La.App. 4 Cir. 8/31/95).

.State v. Broyard, unpub., 95-1444 (La.App. 4 Cir. 11/13/96, 684 So.2d 89).

. State v. Broyard, unpub., 97-2645 (La.App. 4 Cir. 12/17/97).

. State v. Broyard, unpub., 92-1748 (La.App. 4 Cir.1992).

. State v. Broyard, unpub., 92-1748 (La.App. 4 Cir.1992).